Emiliano **MAREZ, Valentine Marez as Special Administrator of the Estate of James Marez, Deceased, Bernadette Valdez, and Julia Valdez, a/k/a Julia Valdez Montoya, Petitioners,**

v.

**DAIRYLAND INSURANCE COMPANY, a Wisconsin corporation, Respondent.**

No. 79SC267.

Supreme Court of Colorado,
En Banc.

Dec. 21, 1981.

Rehearing Denied Jan. 11, 1982.

Frye & Sawaya, Richard B. Rose, Michael G. Sawaya, Denver, for petitioners Emiliano Marez and Valentine Marez as Special Administrator of the Estate of James Marez, Deceased.

Marilyn T. Meadoff, Denver, for petitioners Bernadette Valdez and Julia Valdez, a/k/a Julia Valdez Montoya.

Pryor, Carney & Johnson, Irving G. Johnson, Thomas L. Roberts, Englewood, for respondent.

Irvin M. Kent, Denver, for amicus curiae Colo. Trial Lawyers Ass'n.

LEE, Justice.

We granted certiorari to review the opinion of the court of appeals in *Dairyland Insurance Co. v. Marez*, 42 Colo.App. 536, 601 P.2d 353 (1979). We affirm the judgment of the court of appeals.

On September 18, 1973, James Marez was seriously injured when his bicycle collided with an automobile driven by Bernadette Valdez. The automobile was owned by Valdez' mother, Julia Valdez Montoya, and was insured by Dairyland Insurance Company (Dairyland), the respondent here. Both Valdez and Montoya were aware that Marez had been injured and that he was taken to a hospital.

The Dairyland Insurance policy contained the following conditions:

"1. Notice of Accident . . .

When an accident occurs written notice shall be given by or on behalf of the Insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses.

2. Notice of Claim or Suit . . .

If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

\*     \*     \*     \*     \*     \*

12. No action shall lie against the company unless, as a condition precedent

thereto, there shall have been full compliance with all the terms and conditions of the policy, nor until thirty days after the required proofs of claim have been filed with the company."

It was stipulated that neither Bernadette Valdez nor Julia Montoya ever provided written notice of the accident to Dairyland. However, Julia Montoya claimed that she telephoned the insurance agency and gave verbal notification of the accident. This was denied by the insurance agent and his employee. The trial court specifically resolved the conflict in this evidence in favor of the insurance company agent, finding as a fact that no verbal notice of the accident was ever given. The trial court found that both Valdez and Montoya were persons of ordinary and reasonable intelligence and were capable of understanding the notice requirements of the insurance policy for reporting the accident, and that they were in fact aware that James Marez sustained significant injuries in the accident; yet they failed to give notice as required by the insurance policy.

On April 30, 1976, Bernadette Valdez and Julia Montoya were served with a summons and complaint in an action filed on behalf of James Marez, who died from causes unrelated to the accident. It was undisputed that neither of the parties contacted Dairyland nor did they forward the suit papers to the insurance company as required by the insurance policy. It was also undisputed that Dairyland first learned of the accident by happenstance more than two and one-half years after the accident. On June 29, 1976, the information concerning the accident came to the attention of a Dairyland field adjustor, who, while working on an unrelated matter, was advised by one of the attorneys for Marez that the accident had occurred and involved serious injuries to Marez. Once Dairyland learned of the claim, it searched its records and finding no record of notification of the accident or claim, it forwarded a reservation of rights document to the insured by registered mail. Dairyland then commenced this declaratory judgment action, seeking a declaration as to its obligations and liabilities under the policy of automobile insurance.

At trial, attorneys for Montoya attempted to elicit testimony as to whether Dairyland was prejudiced by the failure to give Dairyland written notice of the accident and lawsuit. The trial court determined as a matter of law that prejudice to Dairyland, if any, was not to be considered under the facts of this case in determining the obligations and liabilities of Dairyland under the policy. The court concluded that there had been a total lack of compliance with the conditions of the policy; that the notice conditions of the policy were express conditions precedent; that Valdez and Montoya offered no legal excuses for their failure to comply with the policy conditions; and, that since those conditions had not been complied with, the insured had committed a material breach of the insurance contract. The court held that Dairyland was relieved of any liability under the policy to either defend the insureds or to indemnify them with respect to any judgment subsequently obtained arising out of the accident of September 18, 1973.

Marez, Valdez, and Montoya appealed to the court of appeals which affirmed the trial court's holding that the failure of Valdez and Montoya to notify Dairyland of the accident or to forward suit papers to it was not excused. Furthermore, the court of appeals held that prejudice is not a factor in determining the insurer's liability when conditions precedent requiring the insured to give notice of an accident and to forward suit papers to the insurance company are breached and the breach of conditions is unexcused.

We affirm the court of appeals.

## I.

We adhere to the fundamental concept enunciated in the landmark case of *Barclay v. London Co.*, 46 Colo. 558, 105 P. 865 (1909), that the rights and duties flowing from an accident insurance policy are contractual in nature and are measured by the terms and conditions of the insurance contract to which the parties thereto have

agreed. Insurance contracts are to be construed according to the general rules for construction of contracts. As stated in *Olinger v. Christy*, 139 Colo. 425, 342 P.2d 1000 (1959), a policy of insurance is not *sui generis*, but is treated in the law in the same way as contracts are treated generally, and is to be interpreted according to the intent of the parties. *Accord, Waggoner v. Wilson*, 31 Colo.App. 518, 507 P.2d 482 (1973); *Jennings v. Brotherhood Accident Co.*, 44 Colo. 68, 96 P. 982 (1908).[1]

*Barclay, supra*, dealt with provisions for notice of accident and claim similar to those in the present case, and although the policy there required the giving of immediate written notice of an accident or claim, the insured delayed in notifying the insurance company for over three months, and a denial of liability followed. This court characterized the insurance policy as an executory contract and notice provisions as conditions precedent, compliance with which was mandatory, absent a legal excuse for failure to comply. The principles of *Barclay* have been substantially followed by our courts throughout the years without fundamental change.

In *Certified Indemnity Co. v. Thun*, 165 Colo. 354, 439 P.2d 28 (1968), this court expressed the rule as follows:

"... failure to notify the insurer within a reasonable time constitutes a breach of that contract requiring a justifiable excuse or extenuating circumstances explaining the delay. Unless the delay is so explained, the insurer cannot be held liable under the insurance contract to defend the insured and to pay any judgments recovered against him."

Illustrative of the firm adherence to the foregoing rule are the following cases: *Cochran v. Massachusetts Bonding and Insurance Co.*, 76 Colo. 198, 230 P. 788 (1924); *Thomas v. Guaranty Nat'l. Ins. Co.*, 43 Colo. App. 34, 597 P.2d 1053 (1979); *Matthews v. Arko*, 534 P.2d 658 (Colo.App.1975); *Celina*

*Mutual Ins. Co. v. Berg*, 486 P.2d 472 (Colo. App.1971), *cert. denied; Interstate v. Burns*, 29 Colo.App. 276, 484 P.2d 1257, *cert. denied* (1971); *Overturf v. National Union Fire Ins. Co.*, 470 P.2d 600 (Colo.App.1970); *Wetzbarger v. Eisen*, 475 P.2d 637 (Colo. App.1970); *compare, Barnes v. Waco Scaffolding & Equip. Co.*, 41 Colo.App. 423, 589 P.2d 505 (1979), *cert. denied*.[2]

■ The foregoing cases involved factual situations where the notice of accident or suit had been delayed but eventually was given to the insurer, though not in a timely manner as required by the policy conditions. We emphasize that in the present case Valdez and Montoya, without justifiable excuse or extenuating circumstances, totally failed to give notice of any kind whatsoever to Dairyland, and that it was only by chance that Dairyland learned of the accident and lawsuit two and one-half years after the accident. A review of the evidence presented at trial fully supports the trial court's findings on these factual issues. We are not at liberty to otherwise interpret the record were we inclined to do so.

■ In accordance with the rule of law consistently followed over the years by our courts, under the circumstances of the present case the failure of Valdez and Montoya to comply with the notice of accident and suit conditions, as a matter of law, constituted a material breach of the contract of insurance, relieving Dairyland of its duty to defend the insureds and to indemnify them with respect to any judgment holding them liable for the injuries to Marez.

## II.

Petitioners contended in the trial court and assert here that they should have been allowed to present evidence showing that Dairyland was not prejudiced by reason of their failure to comply with the notice provisions of the policy. The trial court held

---

1. We do not regard the insurance contract in this case to be an adhesion contract. *See Jones v. Dressel*, Colo., 623 P.2d 370 (1981).

2. Although some of the above cited decisions of the court of appeals were not selected for official publication, they are included to demonstrate the consistency with which the appellate courts have followed the *Barclay, supra* rule.

that such evidence was immaterial to the issues before the court. According to the petitioners' rationale, the insurer should escape liability under the terms of the contract only upon showing that it suffered prejudice as a result of the failure to provide notice and forward suit papers. They argue that public policy concerning automobile liability insurance, as announced by the general assembly in the "Motor Vehicle Financial Responsibility Act," encourages the compensation of those injured in automobile accidents and favors the validity of automobile insurance contracts. *See* section 42–7–101, *et seq.*, C.R.S.1973. Therefore, the argument goes, an insurer should not be able to deny liability when an insurance contract is in full force and effect, without first showing that it has been prejudiced by the delay in reporting an accident or in the forwarding of suit papers.

We note in passing that local federal courts have inferred that a rule of prejudice exists in Colorado, which allows the court to consider prejudice in determining insurer liability. *Jennings v. Horace Mann Mutual Ins. Co.*, 549 F.2d 1364 (10th Cir. 1977); *Hubner and Williams Construction v. London Guarantee and Accident Co.*, 280 F.Supp. 288 (D.Colo.1967); *Aetna Cas. and Sur. Co. v. Samson*, 471 F.Supp. 1041 (D.Colo.1979); *Dairyland Ins. Co. v. Cunningham*, 360 F.Supp. 139 (D.Colo.1973). This court has not directly addressed the issue of prejudice to an insurer or its effect on an insurer's obligation to defend and indemnify the insured.

The Colorado Court of Appeals has held that in a case of excused delay in notification, prejudice is irrelevant. *Barnes v. Waco Scaffolding & Equip. Co.*, 41 Colo. App. 423, 589 P.2d 505 (1978).[3]

Petitioners urge that we depart from the rationale of *Barclay v. London Co., supra,* and *Certified Indemnity Co. v. Thun, supra,* and adopt a new rule which takes into account the prejudice to the insurance company occasioned by the unexcused delay in giving notice of accident or claim. Petitioners assert this is the modern trend and that Colorado should join those other jurisdictions which have adopted the prejudice approach in determining liability in delayed notice cases. Generally, the rule in those cases puts the burden upon the insurance company to prove prejudice due to untimely notice if the insurance company is to be relieved of its contractual obligations. *See, e.g., Globe Indemnity Co. v. Blomfield,* 115 Ariz. 5, 562 P.2d 1372 (Ariz.App.1977); *Billington v. Interinsurance Exchange,* 71 Cal.2d 728, 456 P.2d 982, 79 Cal.Rptr. 326 (1969); *Johnson Controls, Inc. v. Bowes,* —— Mass. ——, 409 N.E.2d 185 (1980).

A small number of jurisdictions presume prejudice to the insurer when there is an untimely delay in providing notice. The burden is placed on the insured to rebut the presumption by proving that prejudice does not exist. *See, e.g., Klein v. Allstate Ins. Co.,* 367 So.2d 1085 (Fla.App.1979); *Henderson v. Hawkeye-Security Ins. Co.,* 252 Iowa 97, 106 N.W.2d 86 (1960); *Lumbermen's Mut. Cas. Co. v. Oliver,* 115 N.H. 141, 335 A.2d 666 (1975).

■ Colorado has consistently followed the prevailing majority rule, based on traditional principles of contract law, that an unexcused delay in giving notice or forwarding suit papers relieves the insurer of its obligations under the policy. *See, e.g., Southern Guaranty Ins. Co. v. Thomas,* 334 So.2d 879 (Ala.1976); *INA Ins. Co. of Ill. v. Chicago,* 62 Ill.App.3d 80, 19 Ill.Dec. 519, 379 N.E.2d 34 (1978); *Members Mutual Ins. Co. v. Cutaia,* 476 S.W.2d 278 (Tex.1972); 8 Appleman, *Insurance Law and Practice,* § 4732 (1962); Comment, *The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice,* 74 *Dick.L.Rev.* 260 (1970); Annot., 18 A.L.R.2d 443 (1951).

---

**3.** In two unpublished opinions the Colorado Court of Appeals has rejected insurer prejudice as a relevant subject of inquiry in late notice cases. *Wetzbarger v. Eisen,* 475 P.2d 637 (Colo.App.1970); *Matthews v. Arko,* 534 P.2d 658 (Colo.App.1975). We decline to either endorse or reject the rationale espoused by the court of appeals in those unpublished opinions, but merely cite them to illustrate the consistency with which these cases have been decided.

In our view, the facts of this case do not justify a departure from the present rule and the pronouncement of a new rule based on the concept of prejudice. To adopt a new rule in this case—where the insureds have totally failed to comply with the contract conditions—would negate the purpose of the contract conditions and render them meaningless and would in effect rewrite the insurance policy contrary to the intent of the parties as expressed by the clear, unambiguous language of the contract. It is universally acknowledged, as petitioners have admitted, that the notice of accident and claim provisions provide substantial benefits and protections to both the insurance company and the insured. As stated in *Certified Indemnity Co. v. Thun, supra:*

"The reasons insurers require prompt notice of an accident from the insured are well stated in 8 J. Appleman, *supra,* § 4731:

'The purpose of a policy provision requiring the insured to give the company prompt notice of an accident or claim, is to give the insurer an opportunity to make a timely and adequate investigation of all the circumstances. An adequate investigation often cannot be made where notice is long delayed, because of the possible removal or lapse of memory on the part of witnesses, the loss of opportunity for examination of the physical surroundings and making photographs thereof for use at the trial, and the possible operation of fraud, collusion or cupidity. Such a requirement tends to protect the insurer against fraudulent claims, and also against invalid claims made in good faith. And further, if the insurer is thus given the opportunity for a timely investigation, reasonable compromises and settlements may be made, thereby avoiding prolonged and unnecessary litigation....'"

■ In view of the salutary purposes of the provisions for notice of accident and claim, they should not be lightly ignored or set aside without substantial justification, which we find lacking in the present case. Moreover, were we to attempt to adopt a new rule of law embodying the various aspects of the concept of prejudice, we would be formulating an abstract rule in a factual vacuum. Absent a factual context which compels, in the interests of justice, a departure from our present long established rule and the adoption of a new rule based on different considerations, it is jurisprudentially sound to leave the matter to another day, or to the wisdom of the general assembly which has recently enacted sweeping revisions of the Colorado insurance law by adoption of the "Colorado Automobile Accident Reparations Act," section 10–4–701, *et seq.*, C.R.S.1973.[4]

The judgment is affirmed.

QUINN, Justice, dissenting:

I disagree with the majority's adoption of a rule which, in the absence of prejudice to the insurer, discharges the insurer from its contractual obligations to the insured and works a forfeiture of the insured's contractual rights. I therefore respectfully dissent.

An automobile liability insurance policy no longer can be considered a private contract, the conditions of which are mutually negotiated between the insurer and the insured. There is a contractual inequality in the execution of automobile liability policies which a rule of strict contractual construction does not adequately address. Several courts have faced up to this reality. The

4. Concerning the latter approach, the Supreme Court of Texas noted:

"The matter of whether prejudice is material and under what circumstances the failure to comply with conditions precedent will be excused has been handled by legislation in some states, presumably after public hearings so that all sides may be heard.

\* \* \* \* \* \*

"Our conclusion is ... that on balance it is better policy for the contract of insurance to be changed by the public body charged with their supervision, the State Board of Insurance, or by the Legislature rather than for this Court to insert a provision that violations of conditions precedent will be excused if no harm results from their violation." *Members Mutual Ins. Co. v. Cutaia,* 476 S.W.2d 278 (Tex.1972).

Pennsylvania Supreme Court in *Brakeman v. Potomac Insurance Company*, 472 Pa. 66, 371 A.2d 193 (1977), put the matter this way:

"An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured. The only aspect of the contract over which the insured can 'bargain' is the monetary amount of coverage. And, as we have recognized, notice of accident provisions, such as that with which we are concerned instantly, are uniformly found in liability insurance policies.... Indeed, a review of the cases indicates that often the policies express the condition in identical language.... Thus, an insured is not able to choose among a variety of insurance policies materially different with respect to notice requirements, and a proper analysis requires this reality be taken into account." 371 A.2d at 196.

*See also, e.g., State Farm Mutual Automobile Insurance Co. v. Johnson*, 320 A.2d 345 (Del.Super.Ct.1974); *Pickering v. American Employers Insurance Co.*, 109 R.I. 143, 282 A.2d 584 (1971); Note, The Materiality of Prejudice to the Insurer as a Result of the Insured's Failure to Give Timely Notice, 74 Dick.L.Rev. 260 (1970).

Moreover, what is at stake here as a result of noncompliance with the notice requirement is really a forfeiture of the very asset which the insured purchased with a premium payment, *i.e.*, a liability policy providing the insured a legal defense to claim an indemnification against a judgment. As

the New Jersey Supreme Court observed in *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 94, 237 A.2d 870, 873–74 (1968):

"This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds." [1]

The purpose of the notice provision, after all, is to prevent the insurer from being prejudiced in its investigation and defense of a claim. 8 *J. Appleman, Insurance Law and Practice* § 4731 (1980). In cases where the insured fails to provide the insurer with any notice whatever of the accident or claim, an appropriate rule of law calculated to accommodate the legitimate interests of both the insurer and the insured is that formulated by the Tenth Circuit Court of Appeals in *Jennings v. Horace Mann Mutual Insurance Co.*, 549 F.2d 1364 (10th Cir. 1977). Under the *Jennings* formulation, there is a presumption of prejudice to the insurer in such cases and the insured has the burden of going forward with some evidence to dispel the presumption; if such evidence is presented, "the presumption loses any probative force which it may have had and it is then up to the [insurer] to go forward with the evidence that actual prejudice existed." 549 F.2d at 1368; *see also, e.g., Hubner and Williams Construction Co. v. London Guarantee and Accident Co.*, 280

1. The consequences of noncompliance with the notice requirements often are phrased in legalese which is beyond the comprehension of the average layperson. The policy in this case, exclusive of special endorsements, contains eleven pages divided into three sections entitled "Insuring Agreements", "Exclusions" and "Conditions". There are some twenty-five separate subsections listed in the "Conditions" section, some of which are applicable to certain types of coverage. The notice requirements appear in paragraphs 1 and 2 of the "Conditions" section and are applicable to the insured's liability coverage. However, these paragraphs make no mention of the consequences of an insured's failure to give notice.

Rather, paragraph 12 of the "Conditions" section states that "[n]o action shall lie against the company, unless as a condition precedent thereto, there shall have been full compliance with all the terms of the policy...." Under such circumstances one might reasonably question whether the average layperson, lacking legal or business training, would come to the conclusion that the "no action against the company" provisions of paragraph 12 render the notice requirements of paragraphs 1 and 2 conditions precedent to the insurer's contractual obligations to defend and indemnify, as outlined in the "Insuring Agreements" section of the policy.

F.Supp. 288 (D.Colo.1967).[2] Far from being unmanageable, the *Jennings* rule is uniquely suited to achieve a just resolution of competing claims. If indeed the insurer has not been prejudiced by the lack of notice, it is no worse off with respect to a pending claim than if it received notice as soon as practicable.

Judicial recognition of public interest considerations in the construction of automobile liability insurance policies is long overdue. The Colorado General Assembly in the Motor Vehicle Responsibility Act, section 42–7–102, C.R.S.1973, acknowledged the untold injury and financial loss visited upon traffic accident victims by uninsured motorists. Other courts, noting this social catastrophe, have viewed the automobile liability insurance contract as vested with a significant public interest that should not be ignored in the construction of its provisions. *E.g., Simmons v. Iowa Mutual Casualty Company*, 3 Ill.2d 318, 121 N.E.2d 509 (1954); *Cooper v. Government Employees Insurance Company, supra; Brakeman v. Potomac Insurance Company, supra.* A rule requiring prejudice to the insurer before discharging it of its contractual responsibilities under the policy recognizes automobile liability insurance for what it is, an instrument of social policy designed to afford financial protection to victims of negligence. Because the rule of prejudice was not applied in this case, I would reverse the judgment of the Court of Appeals and remand for a new trial.

I am authorized to say that Justice DUBOFSKY and Justice LOHR join me in this dissent.

---

**2.** In cases where an insured has given notice but not as soon as practicable, there should be no presumption of prejudice and the insurer should be required to prove that it was prejudiced in its investigation and defense of the claim before it is discharged of its contractual responsibilities to the insured. *See, e.g., Lindus v. Northern Insurance Co.*, 103 Ariz. 160, 438 P.2d 311 (1968); *Cooper v. Government Employees Insurance Co.*, 51 N.J. 86, 237 A.2d 870 (1968); *Lusch v. Aetna Casualty & Surety Co.*, 272 Or. 593, 538 P.2d 902 (1975); *Oregon Automobile Insurance Co. v. Salzberg*, 85 Wash.2d 372, 535 P.2d 816 (1975).