ESTATE OF Rick HARRY, By and Through its Personal Representative, Catherine HARRY, Plaintiff–Appellee,

v.

HAWKEYE–SECURITY INSURANCE COMPANY, Defendant–Appellant.

No. 97CA0507.

Colorado Court of Appeals, Div. A.

April 16, 1998.

Rehearing Denied May 14, 1998.

Certiorari Denied Feb. 22, 1999.

Breit, Bosch, Levin & Coppola, P.C., William C. Marlin, Stephen E. Abrams, Bradley A. Levin, Denver, for Plaintiff–Appellee.

Rodman & Ross–Shannon, John R. Rodman, David L. Murphy, Denver, for Defendant–Appellant.

Opinion by Judge PLANK.

In this declaratory judgment action, defendant, Hawkeye–Security Insurance Co. (Hawkeye), appeals from two partial sum-

mary judgments entered in favor of plaintiff, Estate of Rick Harry. After the summary judgments were entered, the parties entered into a stipulation on damages, preserving Hawkeye's right to appeal. The trial court then entered final judgment based upon the summary judgments and stipulation on damages. We reverse and remand for further proceedings.

The following facts are undisputed. Rick Harry was the insured under an automobile insurance policy issued by Hawkeye that provided uninsured and underinsured (UM/UIM) motorist coverage in the amount of $300,000 per accident. Insured was involved in an automobile accident with an underinsured driver who had liability coverage in the amount of $50,000.

Insured brought suit against the underinsured driver and settled the claim for the underinsured driver's full policy limits in exchange for a general release of liability. Insured then demanded underinsured motorist coverage from Hawkeye.

## I.

The Hawkeye policy provides, in pertinent part, that it will not cover any claim for underinsured motorist damage when the insured has settled his or her claim against the underinsured driver without its consent. Hawkeye contends that the trial court erred in determining that that consent-to-settle clause did not relieve Hawkeye of its obligation to provide UM/UIM benefits. We agree.

### A.

First, we agree with Hawkeye that the consent-to-settle clause does not violate public policy.

The purpose of UM/UIM coverage is to compensate an insured for loss caused by negligent and financially irresponsible motorists, subject to the insured's policy limits. *Kral v. American Hardware Mutual Insurance Co.*, 784 P.2d 759 (Colo.1989).

If an insured elects to purchase UM/UIM coverage, an insurer must pay, up to the limit of the policy, whatever losses the

insured proves he or she is "legally entitled to recover" from the uninsured or underinsured motorist. Section 10–4–609, C.R.S. 1997. If the insured meets this burden, then the insurer is under a statutory and contractual duty to compensate the insured. *Briggs v. American Family Mutual Insurance Co.*, 833 P.2d 859 (Colo.App.1992).

Insurance policies are contracts and are construed according to well-settled principles of contract construction. The rights and duties that flow from an insurance contract are determined by the terms and conditions contained within the insurance policy. *Farmers Insurance Exchange v. Chacon*, 939 P.2d 517 (Colo.App.1997).

However, parties to an insurance contract cannot contractually abrogate statutory requirements reflecting the public policy of the state. Any provision that attempts to dilute, condition, or unduly limit statutorily mandated coverage may be declared void and unenforceable. *Terranova v. State Farm Mutual Automobile Insurance Co.*, 800 P.2d 58 (Colo.1990). Nonetheless, a contract term is not void as against public policy simply because it narrows the circumstances under which coverage applies; rather, a policy provision violates public policy only if it "directly limits" benefits to which the insured is statutorily entitled. *Farmers Insurance Exchange v. Chacon, supra.*

The requirement that an insured obtain written consent from the insurer before making a settlement with anyone who may be legally liable for the accident or forfeit coverage is designed to protect the insurer's right of subrogation. *See Granite State Insurance Co. v. Dundas*, 34 Colo.App. 382, 528 P.2d 961 (1974); G. Couch, *Cyclopedia of Insurance Law* § 45:645 (R. Anderson ed.1967).

Here, we are not persuaded that an insured's right to UM/UIM benefits is substantially burdened by having to seek the consent of the insurer before settling a claim against an uninsured or underinsured driver. Nothing about the condition dilutes or limits the UM/UIM coverage available to an insured. Rather, the condition is designed to

282

protect a valid right of the insurer to pursue its subrogation rights. As a result, the exclusion serves a legitimate purpose and does not diminish the protection of the underinsured motorist statute.

B.

■ Plaintiff contends that, if the consent-to-settle clause is valid, public policy should require Hawkeye to show that it has been prejudiced by plaintiff's settlement. We disagree.

In support of its argument, plaintiff directs us to cases from a number of jurisdictions which have adopted a rule that, before a consent-to-settle clause may be enforced, either the insured must show that the insurer has not been prejudiced, or the insurer must show that it has been prejudiced by the settlement. *See Shelter Mutual Insurance Co. v. Bough,* 310 Ark. 21, 834 S.W.2d 637 (1992); *Galinko v. Aetna Casualty & Surety Co.,* 432 So.2d 179 (Fla.Dist.Ct.App.1983); *Kapadia v. Preferred Risk Mutual Insurance Co.,* 418 N.W.2d 848 (Iowa 1988); *Silvers v. Horace Mann Insurance Co.,* 324 N.C. 289, 378 S.E.2d 21 (1989); *Thiringer v. American Motors Insurance Co.,* 91 Wash.2d 215, 588 P.2d 191 (1978).

However, all of these jurisdictions that have adopted a prejudice rule as to consent-to-settle clauses have also adopted it in other contexts, most notably in the area of timely notice conditions. *Campbell & Co. v. Utica Mutual Insurance Co.,* 36 Ark.App. 143, 820 S.W.2d 284 (1991); *Tiedtke v. Fidelity & Casualty Co.,* 222 So.2d 206 (Fla.1969); *Met–Coil Systems Corp. v. Columbia Casualty Co.,* 524 N.W.2d 650 (Iowa 1994); *Silvers v. Horace Mann Insurance Co.,* 324 N.C. 289, 378 S.E.2d 21 (1989); *Canron, Inc. v. Federal Insurance Co.,* 82 Wash.App. 480, 918 P.2d 937 (1996).

In contrast, Colorado has rejected adoption of a prejudice rule when an insured has failed to give timely notice of a claim in violation of a policy condition. *Marez v. Dairyland Insurance Co.,* 638 P.2d 286 (Colo.1981). In rejecting a prejudice rule in *Marez,* the supreme court noted the following:

To adopt a new rule in this case—where the insureds have totally failed to comply with the contract conditions—would negate the purpose of the contract conditions and render them meaningless and would in effect rewrite the insurance policy contrary to the intent of the parties as expressed by the clear, unambiguous language of the contract.

*Marez v. Dairyland Insurance Co., supra,* 638 P.2d at 291.

The same rationale that applies to conditions requiring timely notice applies to consent-to-settle clauses. Hence, as stated in *Marez:* "[W]ere we to attempt to adopt a new rule of law embodying the various aspects of the concept of prejudice, we would be formulating an abstract rule in a factual vacuum." *Marez v. Dairyland Insurance Co., supra,* 638 P.2d at 291. Such matters are best resolved through the General Assembly.

II.

Because of our resolution regarding the validity of the consent-to-settle clause, we do not address Hawkeye's remaining contention regarding the second summary judgment as to the survival of the insured's UIM claims following his death from unrelated causes.

The judgment is reversed and the cause is remanded for further proceedings consistent with this opinion and with the terms of the stipulated settlement agreement adopted by the trial court on March 17, 1997.

Chief Judge HUME and Judge CASEBOLT concur.