James CLEMENTI and Mary Ann
Clementi, Petitioners,

v.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,
Respondent.

No. 99SC500.

Supreme Court of Colorado,
En Banc.

Jan. 22, 2001.

Nicholas Gradisar, Gradisar, Trechter, Ripperger, Roth & Croshal, Pueblo, CO, Attorney for Petitioners.

Franklin D. Patterson, Patterson, Nuss & Seymour, P.C., Englewood, CO, Attorney for Respondent.

Justice RICE delivered the Opinion of the Court.

We issued a writ of certiorari to review the court of appeals' judgment in *Nationwide Mutual Fire Ins. Co. v. Clementi*, 989 P.2d 192 (Colo.Ct.App.1999). Respondent, Nationwide Mutual Fire Insurance Company ("Nationwide"), filed a declaratory judgment action against Petitioners, the Clementis, seeking a determination that the Clementis had forfeited coverage under their uninsured motorist ("UIM") policy by failing to provide timely notice of their claim. The trial court concluded as a matter of law that the Clementis' notice was untimely, that the Clementis' delay was unreasonable, and that Nationwide was not required to demonstrate prejudice before forfeiting benefits under the Clementis' UIM policy. The court of appeals affirmed the trial court's ruling, holding that a five-month delay in the Clementis' filing notice was unreasonable. The court of appeals also held, based on this court's decision in *Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981), that Nationwide was not required to make a showing of prejudice prior to forfeiting the Clementis' benefits.

We granted certiorari to determine whether the Clementis' notice was untimely and whether Nationwide was required to demonstrate prejudice before forfeiting benefits under the UIM policy in question. We now reverse the court of appeals and expressly adopt the notice-prejudice rule in UIM cases. We decline to overrule *Marez* at this time because we find that its holding applies only to liability cases and is thus inapplicable to this case. However, to the extent that *Marez* has been applied by the court of appeals to UIM cases, we disapprove.

## I. FACTS AND PROCEDURAL HISTORY

On March 11, 1994, James Clementi, a Colorado state trooper, was injured in an automobile accident while acting within the course and scope of his employment. In August 1994, Clementi was notified by State Farm that the other driver's policy was limited to $50,000. The following spring, Clementi's physician determined that he had reached maximum medical improvement and had sustained a seventeen percent impairment rating. In March 1995, Clementi was awarded workers' compensation benefits of approximately $43,000. Clementi gave notice to Nationwide of his UIM claim for damages exceeding the State Farm and workers' compensation benefits in August 1995, seventeen months after the accident. In April 1996, Clementi received $50,000 from State Farm, pursuant to a settlement agreement.

Nationwide filed suit, seeking a declaratory judgment voiding the Clementis' UIM coverage because of their alleged failure to give timely notice of their claim as required by their policy. The trial court determined that the latest date upon which Clementi could have ascertained with reasonable diligence that the other driver was underinsured was March 1995, when Clementi learned that

he had a seventeen percent disability and knew that his actual damages were already approaching the other driver's policy limits. The court found that the Clementis' unexplained failure to notify Nationwide of their potential UIM claim until five months after this date was unreasonable. The court found that the language in the policy requiring that notice be provided "as soon as practicable" was not ambiguous within the context of Colorado case law. The court also recognized that the policy reason for enforcing notice requirements is to allow insurers to investigate and protect against false claims. Finally, the court rejected the Clementis' argument that Nationwide should be required to show prejudice from their late notice in order to void their UIM benefits. Citing *Marez*, the court noted that Colorado law appeared to require no such showing. Thus, the trial court granted Nationwide's motion for summary judgment and declared the Clementis' UIM coverage null and void.

On appeal, the court affirmed the trial court's ruling, holding that the policy's language requiring notice "as soon as practicable" was not ambiguous, and that it did not violate public policy. *Clementi*, 989 P.2d at 194–95. The court also agreed with the trial court's finding that the Clementis' five-month delay was unreasonable as a matter of law. *Id.* at 195. Finally, the court noted that although other jurisdictions have adopted a rule requiring an insurance company to show prejudice when an insured fails to give timely notice of a UIM claim, Colorado courts have refused to impose that requirement. *Id.* at 196.

We granted certiorari to determine whether the trial court properly granted summary judgment in favor of Nationwide on the basis that the Clementis' notice was untimely as a matter of law and on the basis that Nationwide was not required to demonstrate preju-

dice before it could forfeit the Clementis' UIM benefits.[1]

## II. ANALYSIS

This case presents an opportunity for us to address the status of the so-called notice-prejudice rule[2] in Colorado. Nearly twenty years ago, this court refused to adopt the notice-prejudice rule in a liability insurance case, holding that in denying benefits, an insurer is not required to demonstrate that it was prejudiced by an insured's failure to comply with a policy's notice requirements. *See Marez*, 638 P.2d at 291. The court of appeals has applied our ruling in *Marez* to both liability and UIM cases. *See Haller v. Hawkeye Security Ins. Co.*, 936 P.2d 601, 604 (Colo.Ct.App.1997); *Emcasco Ins. Co. v. Dover*, 678 P.2d 1051, 1054 (Colo.Ct.App.1983). However, this court has not previously considered whether the notice-prejudice rule applies in UIM cases. Therefore, as this is a matter of first impression, our analysis encompasses an examination of the treatment of the notice-prejudice rule in other jurisdictions, as well as a discussion of the principles and rationale underlying the rule.

### A. Standard of Review

We are reviewing the trial court's grant of Nationwide's motion for summary judgment under C.R.C.P. 56. Under this rule, a motion for summary judgment should be granted only when there are no issues of material fact. C.R.C.P. 56; *Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 83 (Colo.1999). Summary judgment is a drastic remedy and should be granted only if it has been clearly established that the moving party is entitled to a judgment as a matter of law. *Bebo*, 990 P.2d at 83; *Dale v. Guar. Natl. Ins. Co.*, 948 P.2d 545, 553 (Colo.1997). In determining whether summary judgment is proper, the nonmoving party is entitled to

---

1. We granted certiorari on the following issue: Whether the court of appeals erred in affirming the trial court, which held, as a matter of law, that the notice given by the Clementis to Nationwide, seven months before settlement with the tortfeasor, was not timely and that Nationwide was not required to demonstrate prejudice before it could forfeit underinsured motorist benefits.

2. *See Burns v. Int'l Ins. Co.*, 929 F.2d 1422, 1424 (9th Cir.1991) (holding that under the notice-prejudice rule, a breach of an insurance policy's notice provision by the insured does not provide the insurer with a valid defense unless the insurer is prejudiced by the breach).

any favorable inferences that may reasonably be drawn from the facts, and all doubts must be resolved against the moving party. *Bebo*, 990 P.2d at 83.

## B. Timeliness of Notice

■ The Clementis' policy requires an insured to "submit written proof of the claim ... as soon as practicable." R. at 68. The Clementis did not notify Nationwide of their UIM claim until seventeen months after the accident. The trial court found that at the latest, the Clementis should have provided Nationwide notice of their UIM claim five months before notice was actually given. The court found that the Clementis' unexplained delay was unreasonable as a matter of law. The Clementis argue that the trial court erred in holding that their notice was untimely because it was given seven months before their settlement with State Farm, and thus was in substantial compliance with the terms of the policy. We disagree.

■ A policy's requirement of notice "as soon as practicable" means that notice must be given within a reasonable length of time under the circumstances. *Certified Indem. Co. v. Thun*, 165 Colo. 354, 358, 439 P.2d 28, 30 (1968). An insured's failure to notify an insurer within a reasonable time constitutes a breach of contract requiring a justifiable excuse or extenuating circumstances explaining the delay. *Id.*

The court of appeals has held that a delay is justified when the purposes of the notice provision are met by actual notice to the insurer, whether or not made in strict compliance with the policy. *Hansen v. Barmore*, 779 P.2d 1360, 1362 (Colo.Ct.App.1989); *see Emcasco*, 678 P.2d at 1053 (concluding that where an insurer was informed of a suit filed against the insured six weeks after the claim was filed, there was substantial compliance with a policy's notice requirements). In *Hansen*, the court held that timely notice provided by a third party, rather than by the insured, substantially satisfied the notice requirements under the policy in question. *Hansen*, 779 P.2d at 1362. In *Emcasco*, the court held that an insured substantially complied with the notice requirements of his policy by providing prompt notice of the

claim, despite not providing notice of a counterclaim by the other driver until six weeks after the counterclaim was filed, but twenty months prior to the trial date. *Emcasco*, 678 P.2d at 1053. Thus, in both cases where the court of appeals found substantial compliance, the insurer received prompt notice of the claims at issue. *Hansen*, 779 P.2d at 1364; *Emcasco*, 678 P.2d at 1053.

■ In the present case, however, the Clementis did not provide notice to Nationwide until five months after they reasonably could have known about their claim. The duty to give notice under a UIM policy arises when an insured, with reasonable diligence, can ascertain that the alleged tortfeasor is underinsured. *Prudential Prop. & Cas. Ins. Co. v. LaRose*, 919 P.2d 915, 918 (Colo.Ct. App.1996). Therefore, we hold that the Clementis' delayed notice did not substantially comply with the notice provisions in the UIM policy and that the trial court properly found that the notice was untimely as a matter of law and that the Clementis' delay was unreasonable.

Having thus determined that the Clementis' notice was untimely, we now address whether Nationwide should have been required to show that it had been prejudiced by the Clementis' untimely notice before denying them of their benefits.

## C. Notice–Prejudice Rule

### Traditional Approach

Traditionally, courts did not consider prejudice in late-notice cases. Charles C. Marvel, Annotation, *Modern Status of Rules Requiring Liability Insurer to Show Prejudice to Escape Liability Because of Insured's Failure or Delay in Giving Notice of Accident or Claim, or in Forwarding Suit Papers*, 32 A.L.R.4th 141 (1984); John A. Appleman & Jean Appleman, *Insurance Law & Practice* § 5083.35, at 292 (1981). The traditional approach is grounded upon a strict contractual interpretation of insurance policies under which delayed notice was viewed as constituting a breach of contract, making the issue of insurer prejudice immaterial. *See Aetna Cas. & Sur. Co. v. Murphy*, 206 Conn. 409, 538 A.2d 219, 220 (1988); *Ouel-*

*lette v. Maine Bonding & Cas. Co.,* 495 A.2d 1232, 1234 (Me.1985); *Brakeman v. Potomac Ins. Co.,* 472 Pa. 66, 371 A.2d 193, 195 (1977); *Alcazar v. Hayes,* 982 S.W.2d 845, 849 (Tenn. 1998). The traditional approach furthers the public policy purposes for a notice requirement in an insurance policy: (1) to allow the insurer to conduct a prompt investigation and adequate defense of the claim; and (2) to protect the insurer from potentially fraudulent claims. *Marez,* 638 P.2d at 291; *Thun,* 439 P.2d at 30; *Shelter Mut. Ins. Co. v. Selley,* 942 P.2d 1370, 1371 (Colo.Ct.App. 1997); Appleman, *supra,* at 292–93; Richard L. Suter, *Insurer Prejudice: Analysis of an Expanding Doctrine in Insurance Coverage Law,* 46 Me. L.Rev. 221, 223 (1994).

For twenty-five years, Colorado has adhered to the traditional approach that an unexcused delay in giving notice relieves the insurer of its obligations under an insurance policy, regardless of whether the insurer was prejudiced by the delay. *See Marez,* 638 P.2d at 290; *Shelter Mut. Ins. Co. v. Selley,* 942 P.2d 1370, 1373 (Colo.Ct.App.1997); *Haller,* 936 P.2d at 604 (Colo.Ct.App.1997); *Hansen,* 779 P.2d at 1362; *Graton v. United Sec. Ins. Co.,* 740 P.2d 533, 534 (Colo.Ct.App. 1987); *Emcasco,* 678 P.2d at 1054.

In *Marez,* this court refused to depart from the traditional approach and require an insurer to demonstrate that it was prejudiced by an insured's failure to comply with the notice requirements of a liability policy in order to deny benefits. 638 P.2d at 286. Marez had been injured when his bicycle collided with an automobile. *Id.* at 287. The automobile owner's insurer was never provided with written notice of the accident, as required under the owner's liability policy. *Id.* at 288. Marez later died from causes unrelated to the accident and a suit was brought against the owner on behalf of Marez. *Id.* The owner failed to forward the suit papers to the insurer. *Id.* Instead, the insurer learned of the accident only by chance two and a half years after it had occurred. *Id.* We held that the owner's total failure to notify the insurer constituted a material breach of the insurance contract, thus relieving the insurer from its duties under the policy. *Id.* at 289.

We declined to join those jurisdictions that had adopted the modern approach and allow the petitioners to show that the insurer had not been prejudiced by their failure to comply with the policy's notice requirements. *Id.* at 290. We noted that Colorado had consistently followed the traditional approach, which was the majority rule at the time. *Id.* We reasoned that adopting the notice-prejudice rule would negate the purpose of the notice requirements, and concluded that the salutary purposes of the notice provisions should not be set aside without substantial justification. *Id.* at 291. We held that the case did not provide a factual context compelling a departure from the traditional approach, noting that "it is jurisprudentially sound to leave the matter to another day, or to the wisdom of the general assembly." *Id.*[3,4]

The court of appeals has applied *Marez* in various contexts involving both liability insur-

---

3. Our research reveals only three jurisdictions in which a consideration of prejudice in late-notice cases has been mandated by the legislature: Georgia, Ga.Code Ann. § 33–7–15 (2000); *Champion v. S. Gen. Ins. Co.,* 198 Ga.App. 129, 401 S.E.2d 36, 37 (1990), Maryland, Md.Code Ann., Insurance § 19–110 (2000); *State Farm Mut. Auto. Ins. Co. v. Gregorie,* 131 Md.App. 317, 748 A.2d 1089, 1093 (Spec.App.2000), *cert. granted,* 359 Md. 668, 755 A.2d 1139 (2000), and Wisconsin, Wis. Stat. §§ 631.01, 631.15(3m), 631.81(1), 632.26 (2000); *Lexington Ins. Co. v. Rugg & Knopp, Inc.,* 1 F.Supp.2d 937 (E.D.Wis.1998).

4. Three members of the court dissented in *Marez.* 638 P.2d at 291 (Quinn, J., dissenting). The dissent departed from the contractual approach, reasoning that an automobile liability insurance policy could not be considered a freely negotiat-

ed private contract because of the inequality of power between the parties. *Id.* The dissent further reasoned that consideration of insurer prejudice was required because of the severity of a forfeiture of the "very asset which the insured purchased with a premium payment, i.e., a liability policy" because of a noncompliance with the notice requirement. *Id.* Noting that the very purpose of a notice provision is to prevent the insurer from being prejudiced in its investigation and defense of a claim, the dissent concluded that if an insured provides delayed notice, there should be no presumption of prejudice, but rather, the insurer should be required to prove that it was prejudiced in its investigation and defense of the claim before being discharged of its responsibilities to the insured. *Id.* at 293, n. 2.

ance and UIM policies. *Estate of Rick Harry By & Through Harry v. Hawkeye–Security Ins. Co.*, 972 P.2d 279, 282 (Colo.Ct.App. 1998) (relying on *Marez* in rejecting the adoption of a prejudice rule with regard to a violation of a consent-to-settle clause in a UIM policy); *Shelter*, 942 P.2d at 1373(relying on *Marez* to hold that insurers were not required to demonstrate that they had been prejudiced by an insured's failure to comply with the notice provisions of a UIM policy); *Haller*, 936 P.2d at 604 (holding, based on *Marez*, that it is improper to consider prejudice in assessing compliance with the notice provisions of a liability policy); *Graton*, 740 P.2d at 534 (relying on *Marez* to hold that where delay in giving notice required under a no-fault policy is unexcused, prejudice to the insurer need not be shown); *Emcasco*, 678 P.2d at 1054 (noting that, under *Marez*, prejudice to a liability insurer is not a factor to be considered in a late-notice case).

However, because *Marez* involved a no-notice liability case, we find that *Marez* is inapplicable in determining whether insurer prejudice should be considered in the UIM late-notice case at ·bar.[5] Accordingly, we now address whether the notice-prejudice rule should apply to UIM cases in Colorado. In doing so, we review the case law in other jurisdictions on this issue in light of Colorado's treatment of UIM policies.

Few courts today strictly adhere to the traditional approach which allowed for no consideration of insurer prejudice in determining whether benefits should be denied due to noncompliance with an insurance policy's notice requirements. *Alcazar*, 982 S.W.2d at 853 (citing New York and Colorado as the "only two states whose highest courts have considered the issue within the last twenty years [and that] have continued to strictly adhere to the traditional approach.")[6] . While some courts continue to apply the traditional approach to late-notice liability cases,[7] the vast majority of courts have joined the modern trend in the context of a UIM case. Appleman, *supra*, at 293; Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance Coverage* § 16.2, at 25 (2d ed.2000); *see e.g., Burgess*, 474 So.2d 634, 637 (holding that in Alabama uninsured motorist cases, unlike liability insurance cases, prejudice to the insurer is a factor to be considered in determining the overall reasonableness of a delay in giving notice of an accident); *Alcazar*, 982 S.W.2d 845, 853 (holding that in Tennessee, the notice requirement in a UIM policy is immaterial to the insurance contract in the event that the insurer was not prejudiced).[8]

---

**5.** We need not consider today whether our ruling in *Marez* continues to apply to liability insurance cases because this issue is not presented by the case at bar. *Cf. Alcazar*, 982 S.W.2d at 856 n. 14 (declining to decide whether the notice-prejudice rule should apply to a standard liability policy since the case before the court involved only a UIM policy); *but see Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 817 (2000) (applying notice-prejudice rule in a liability case sixteen months after *Alcazar* was decided). However, to the extent that the court of appeals has extended our holding in *Marez* to non-liability late-notice cases, *see Estate of Rick Harry*, 972 P.2d at 282; *Shelter*, 942 P.2d at 1373; *Graton*, 740 P.2d at 534; *Emcasco*, 678 P.2d at 1054, we disapprove.

**6.** *But cf. Fairmont Funding v. Utica Mut. Ins. Co.*, 264 A.D.2d 581, 694 N.Y.S.2d 389, 391 (1999) (citing *O'Dowd v. Am. Sur. Co.*, 3 N.Y.2d 347, 355, 165 N.Y.S.2d 458, 144 N.E.2d 359 (N.Y.App.Div.1957), *Inc. Vill. of Pleasantville v. Calvert Ins. Co.*, 204 A.D.2d 689, 612 N.Y.S.2d 441, 443 (1994), and *Kamyr, Inc. v. St. Paul Surplus Lines Ins. Co.*, 152 A.D.2d 62, 547 N.Y.S.2d 964, 967 (N.Y.App.Div.1989) for the

common-law rule that a delay in giving notice of a disclaimer of coverage will not estop the insurer to disclaim unless the insured has suffered prejudice).

**7.** *See Washington Sports & Entm't v. United Coastal Ins.*, 7 F.Supp.2d 1, 12 (D.D.C.1998) (holding that under Washington, D.C. law, a failure to notify in a liability insurance case can be dispositive, and the insurer need not demonstrate prejudice); *Constitution Reinsurance Corp. v. Stonewall Ins. Co.*, 980 F.Supp. 124, 130 (S.D.N.Y.1997) (holding that under New York law, an insured's failure to comply with a liability policy's notice provision serves as a complete defense regardless of prejudice to the insurer), · *aff'd*, 182 F.3d 899 (2d Cir.1999); *State Farm Fire & Cas. Co. v. Wiggins*, 972 F.Supp. 570, 573 (M.D.Ala.1997) (holding that under Alabama law, a liability insurer need not show any prejudice by the delay to release its obligations under an insurance policy).

**8.** *But see Am. Justice v. Hutchison*, 15 S.W.3d 811, 817 (Tenn.2000) (concluding that the policy reasons for adopting the notice-prejudice rule apply to both liability and UIM cases).

*Modern Trend*

Courts that have joined the modern trend by adopting the notice-prejudice rule consider insurer prejudice in determining whether the insurer may deny benefits in late-notice cases. *Alcazar,* 982 S.W.2d at 850. Although many courts that have adopted the notice-prejudice rule have failed to supply a definition of prejudice, generally, an insurer is prejudiced by an insured's breach of a policy requirement when the purposes of the requirement are defeated. *Suter, supra,* at 222–23. Since the purpose of a policy's notice requirement is to allow an insurer to adequately investigate and defend a claim, courts that have adopted the notice-prejudice rule have permitted an insurer to deny benefits only where its ability to investigate or defend the insured's claim was compromised by the insured's failure to provide timely notice. *Suter, supra,* at 224; *see Alcazar,* 982 S.W.2d at 849 (noting that the purpose of a notice requirement is to allow the insurer to make a prompt investigation, prepare a defense and to protect it from the presentation of spurious claims).

Courts have articulated three policy justifications for departing from the traditional approach. These justifications can be generally described as follows: (1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall due to a technicality. *Alcazar,* 982 S.W.2d at 850; *Murphy,* 538 A.2d at 222.

In *Brakeman,* the Pennsylvania Supreme Court rationalized its departure from the traditional approach in part by noting that such an approach fails to recognize the true nature of the relationship between insurance companies and their insureds. 371 A.2d at 196. "An insurance contract is not a negotiated agreement; rather its conditions are by and large dictated by the insurance company to the insured." *Id.* Thus, the *Brakeman* court concluded that a strict contractual approach was inappropriate in deciding a late-notice case. *Id.*

Indeed, this court has recognized the unequal bargaining power of the parties to an insurance policy. "Because of both the disparity of bargaining power between insurer and insured and the fact that materially different coverage cannot be readily obtained elsewhere, automobile insurance policies are generally not the result of bargaining." *Huizar v. Allstate Ins. Co.,* 952 P.2d 342, 344 (Colo.1998). As such, we noted in *Huizar* that courts have assumed a "heightened responsibility" to scrutinize insurance policies that compromise the insured's interests. *Id.*

Courts that have adopted the notice-prejudice rule have also recognized the public interest in enforcing automobile insurance contracts to further the goal of compensating tort victims, including innocent third parties. *Brakeman,* 371 A.2d at 198 n. 8; *Alcazar,* 982 S.W.2d at 850–51. They note that this public interest is thwarted by the traditional approach, which would deny an accident victim who provided late notice from recovering, even if the insurer suffered no prejudice. *Brakeman,* 371 A.2d at 198; *Alcazar,* 982 S.W.2d at 852.

The Colorado legislature has recognized the public interest in compensating accident victims by enacting the Motor Vehicle Financial Responsibility Act at sections 42–7–101 to –609, 11 C.R.S. (2000), and the Colorado Auto Accident Reparations Act at sections 10–4–701 to –726, 3 C.R.S. (2000). In enacting the Motor Vehicle Financial Responsibility Act, the general assembly stated that it was "very much concerned with the financial loss visited upon innocent traffic accident victims by negligent motorists who are financially irresponsible." § 42–7–102, 11 C.R.S. (2000). The general assembly further noted that "it is the policy of this state to induce and encourage all motorists to provide for their financial responsibility for the protection of others, and to assure the widespread availability to the insuring public of insurance protection against financial loss caused by negligent financially irresponsible motorists." *Id.*

Also, by enacting the Colorado Auto Accident Reparations Act, the legislature specifically sought to "avoid inadequate compensation to victims of automobile accidents." § 10–4–702. Indeed, in *Marez,* we deferred to the wisdom of the legislature in light of the significance of its "sweeping revisions of

the Colorado insurance law [reflected in] the adoption of the 'Colorado Automobile Accident Reparations Act.'" 638 P.2d at 291.

Courts that have adopted the notice-prejudice rule have also expressed concern for the severity of forfeiting one's insurance benefits based on the technical violation of a notice provision. *See, e.g., Brakeman,* 371 A.2d at 198 (reasoning that "[a]llowing an insurance company, which has collected full premiums for coverage, to refuse compensation to an accident victim or insured on the ground of late notice, where it is not shown timely notice would have put the company in a more favorable position, is unduly severe and inequitable").[9] Some courts that have taken this position have pointed to the Restatement (Second) of Contracts, which states that: "To the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange." Restatement (Second) of Contracts § 229 (1981). These courts hold that when an insurer is not prejudiced, an insured's failure to comply with a notice requirement is excused, since a "disproportionate forfeiture" ensues from enforcing such a requirement. *Alcazar,* 982 S.W.2d at 853.

Indeed, in Colorado, an analogous line of reasoning has been employed to invalidate insurance provisions that are void as against public policy. As relevant here, Colorado courts have refused to enforce certain provisions in UIM policies whose enforcement would result in some forfeiture of coverage. *Peterman v. State Farm Mut. Auto. Ins. Co.,* 961 P.2d 487, 493 (Colo.1998) (holding that a consent to sue clause in a UIM policy is void as against public policy); *Huizar,* 952 P.2d at 350 (holding that a trial de novo clause in a UIM policy is unenforceable); *Briggs v. Am. Fam. Mut. Ins. Co.,* 833 P.2d 859, 862 (Colo. Ct.App.1992) (holding that a consent to sue clause in a UIM policy is void as against public policy); *but see Farmers Ins. Exch. v.*

*Chacon,* 939 P.2d 517, 521 (Colo.Ct.App.1997) (holding that a UIM provision precluding recovery for wrongful death does not violate public policy and is thus enforceable). These courts have based their conclusions on the principle that insurance provisions that operate to significantly dilute UIM coverage are unenforceable as against the public policy of ensuring that victims of uninsured motorists recover as if they had been injured by an insured driver. *Huizar,* 952 P.2d at 345.

■ Thus, in light of Colorado's recognition of the policy reasons underlying the notice-prejudice rule, we are persuaded by the reasoning of courts that have joined the modern trend and conclude that insurer prejudice should now be considered when determining whether noncompliance with a UIM policy's notice requirements vitiates coverage. Having adopted the notice-prejudice rule in Colorado UIM cases, we now address the appropriate treatment of insurer prejudice in an evaluation of such cases.

### Burden of Proof

■ Courts that have adopted the notice-prejudice rule by considering insurer prejudice in determining whether a denial of benefits is justified by noncompliance with a policy's notice requirements have done so in various ways. A plurality of courts have held that once it is evident that the insured breached the notice provision, the burden of proof should fall upon the insurer to prove that it has been prejudiced by the breach. *Ouellette,* 495 A.2d at 1234; *Alcazar,* 982 S.W.2d at 853–54; *see, e.g., Salerno v. Atl. Mut. Ins. Co.,* 198 Ariz. 54, 6 P.3d 758, 764 (Ct.App.2000); *Vega v. Gore,* 313 Ill.App.3d 632, 246 Ill.Dec. 562, 730 N.E.2d 587, 589 (2000); *Nat'l Union Fire Ins. Co. v.. F.D.I.C.,* 264 Kan. 733, 957 P.2d 357, 368 (1998); *Weaver v. State Farm Mut. Auto. Ins.,* 936 S.W.2d 818, 821 (Mo.1997); *Am. Cont'l Ins. Co. v. PHICO Ins. Co.,* 132 N.C.App. 430, 512 S.E.2d 490, 494 (1999);

9. Some courts have articulated this principle from an opposite view, that is, from the standpoint of the insurer. "If insurers were allowed to avoid payment based on the insured's conduct even in the absence of prejudice, the public policy of risk spreading would be compromised and, in a sense, the insurer would receive a windfall." *Kaplan v. Northwestern Mut. Life Ins. Co.,* 100 Wash.App. 571, 990 P.2d 991, 996 (2000), *amended on other grounds by* 100 Wash.App. 571, 6 P.3d 1177 (2000).

*Brakeman,* 371 A.2d at 198; *Coop. Fire Ins. Ass'n of Vt. v. White Caps, Inc.,* 166 Vt. 355, 694 A.2d 34, 38 (1997); *Kaplan v. Northwestern Mut. Life Ins. Co.,* 100 Wash.App. 571, 990 P.2d 991, 995 (2000), *amended on other grounds by* 100 Wash.App. 571, 6 P.3d 1177 (2000).

In *Brakeman,* the court reasoned that "although it may be difficult for the insurance company to prove it suffered prejudice as a consequence of an untimely notice, it appears to us that it would be at least as difficult for the claimant to prove a lack of prejudice." 371 A.2d at 198. Other courts agree, concluding that the insurer is in a much better position to prove that it has been prejudiced, especially since the insured would otherwise be forced to prove a negative. *Alcazar,* 982 S.W.2d at 855 (citing *Jones v. Bituminous Cas. Corp.,* 821 S.W.2d 798, 803 (Ky.1991)); *White Caps,* 694 A.2d at 38. The *Brakeman* court chose to place the burden of showing prejudice on the insurance company because of the adhesive nature of an insurance contract, the severity of forfeiture and the fact that it was the insurance company who is choosing to disclaim its obligations under the policy. 371 A.2d at 198.

Some courts have held that when the insured fails to comply with a policy's notice requirements, a presumption that the insurer was prejudiced by the breach arises. *See, e.g., Gray v. State Farm Mut. Auto. Ins. Co.,* 734 So.2d 1102, 1103 (Fla.Dist.Ct.App.1999); *Askren Hub States Pest Control Servs. Inc. v. Zurich Ins. Co.,* 721 N.E.2d 270, 278 (Ind. Ct.App.1999); *Alcazar,* 982 S.W.2d at 854; *Murphy,* 538 A.2d at 223; *Neff v. Pierzina,* 235 Wis.2d 276, 616 N.W.2d 525 (Ct.App. 2000).

These courts reason that the insured is the party seeking to be excused from the consequences of violating a contract provision. *Alcazar,* 982 S.W.2d at 855. These courts take the opposite position from those choosing to place the burden on the insurer, arguing that the insured is in a better position to demonstrate that vital witnesses are still available and crucial information has not been lost. *Id.*

■ A few courts have held that prejudice is a factor to be considered along with the insured's excuse for the delay, the length of delay, and the sophistication of the insured, in determining the reasonableness of a delay in notice. *Alcazar,* 982 S.W.2d at 855; *see, e.g., Burgess,* 474 So.2d at 637. In *Burgess,* the Alabama Supreme Court held that in UIM cases, the insured must, at a minimum, put on evidence showing the reason for not complying with the insurer's notice requirement. *Id.* Once such evidence is presented, the insurer may then demonstrate that it was prejudiced by the insured's failure to comply with the policy's notice requirements. *Id.*

■ We find this approach problematic because we believe that insurer prejudice is not relevant to the reasonableness of the insured's delayed notice, and thus should not be considered as a factor. *See Alcazar,* 982 S.W.2d at 855–56 (noting that "[w]hile prejudice may potentially arise from an insured's failure to file notice in accordance with the contract, it is certainly not a factor which has any bearing on an insured's ability to provide timely notice.") Rather, we find that a two-step approach to late-notice cases is appropriate. This approach would require a preliminary determination of whether an insured's notice was timely. Such a determination should include an evaluation of the timing of the notice, and the reasonableness of any delay. Once a court has determined that an insured's notice was untimely, and that the delay was unreasonable, it should then turn to the issue of whether the insured was prejudiced by such untimely notice. Indeed, such an approach comports with that of the majority of courts that have adopted the notice-prejudice rule. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Gregorie,* 131 Md.App. 317, 748 A.2d 1089, 1093 (Spec.App.2000), *cert. granted,* 359 Md. 668, 755 A.2d 1139 (2000); *Ouellette,* 495 A.2d at 1235; *Am. Cont'l,* 512 S.E.2d at 494; *Brakeman,* 371 A.2d at 196; *White Caps,* 694 A.2d at 35.

Having rejected the prejudice-as-a-factor approach, we now determine whether the burden of proving prejudice should be placed on the insurer or on the insured. We agree with the courts that have concluded that it is more difficult for an insured to prove a nega-

232

tive, that is, that the insurer was not prejudiced, than it would be for the insurer to demonstrate that it was hampered in its ability to investigate or defend a claim because of the insured's failure to provide timely notice. *See, e.g., Alcazar,* 982 S.W.2d at 855 (citing *Jones v. Bituminous Cas. Corp.,* 821 S.W.2d 798, 803 (Ky.1991)); *White Caps,* 694 A.2d at 38. Therefore, while we agree that consideration should be given to the fact that the insured is the party seeking to be excused from the consequences of violating a contract provision, we reject the presumption of prejudice approach in favor of placing the burden on the insurer to demonstrate that it was prejudiced. Thus, we now hold that once it has been established that an insured has unreasonably provided delayed notice to an insurer, an insurer may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay.[10]

*Application of Notice–Prejudice Rule*

■ Having thus adopted the notice-prejudice rule in Colorado UIM cases by assigning the burden of proving prejudice to the insurer, we now apply this rule to the case at bar. As discussed above, we find that the trial court properly found that the Clementis' notice, which was given five months after the latest date on which they should have reasonably done so, was untimely as a matter of law, and that the Clementis' delay was unreasonable. *See supra* p. 226. Therefore, our final determination concerns whether Nationwide was prejudiced by the Clementis' delay.

■ As discussed above, an insurer is prejudiced by a delayed notice only when its ability to investigate or defend the insured's claim is compromised by the insured's failure to provide timely notice. *See supra* p. 229. Nationwide contends that Clementi's delay deprived it of its ability to pursue and protect its rights under the insurance policy.

The parties do not dispute that the accident in this case was investigated by the police, the workers' compensation carrier, and State Farm. The record also indicates

that Nationwide had the opportunity to investigate the accident several months prior to the Clementis' settlement with State Farm. However, the record reveals no detailed evidence concerning the other investigations that would indicate whether they are adequate to protect Nationwide's rights under the policy.

Therefore, we reverse the court of appeals' judgment affirming the trial court's grant of summary judgment in favor of Nationwide, and remand this case for a determination of whether Nationwide was prejudiced by the Clementis' delay.

**CONCLUSION**

Today, we expressly adopt the notice-prejudice rule in Colorado, as it applies to UIM cases. We hold that once it has been established that an insured has unreasonably provided delayed notice to an insurer, an insurer may only deny benefits if it can prove by a preponderance of the evidence that it was prejudiced by the delay. In the present case, the trial court properly found that the Clementis' notice was untimely as a matter of law. We conclude that because the record is insufficient to determine whether Nationwide was prejudiced by the Clementis' delay, the court of appeals erred in affirming the trial court's grant of summary judgment. Therefore, we reverse the court of appeals' decision and remand for further proceedings consistent with this opinion.

10. We decline to require that the insurer demonstrate *substantial* prejudice, as some courts have

done. *See, e.g., White Caps,* 694 A.2d at 35.