COLORADO COURT OF APPEALS                                    **2016COA110**

Court of Appeals No. 15CA0770
City and County of Denver District Court No. 14CV31489
Honorable Karen L. Brody, Judge

MarkWest Energy Partners, L.P., a Delaware master limited partnership,

Plaintiff-Appellant,

v.

Zurich American Insurance Company, a New York corporation,

Defendant-Appellee,

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE DAILEY
Taubman and Freyre, JJ., concur

Announced July 14, 2016

Snell & Wilmer, L.L.P., Michael E. Lindsay, James D. Kilroy, Jessica E. Yates,
Luke W. Mecklenburg, Denver, Colorado, for Plaintiff-Appellant

McElroy, Deutsch, Mulvaney & Carpenter, L.L.P., Jane E. Young, Greenwood
Village, Colorado, for Defendant-Appellee

Reed Smith, L.L.P., James M. Davis, Chicago, Illinois; John N. Ellison, Anthony
B. Crawford, Philadelphia, Pennsylvania, for Amicus Curiae United
Policyholders

¶ 1     In this insurance coverage dispute, plaintiff, MarkWest Energy Partners, L.P. (MarkWest), appeals the district court's entry of summary judgment in favor of defendant, Zurich American Insurance Company (Zurich).

¶ 2     The district court concluded that, because MarkWest failed to comply with a condition precedent in a liability policy requiring it to timely report an "incident" to Zurich, it was barred from recovering anything from Zurich.  Contrary to the district court, we conclude that Colorado's "notice-prejudice" rule applies, and that, consequently, MarkWest is only barred from recovering if Zurich was prejudiced by the late report of the incident.  Thus, we reverse and remand for further proceedings.

## I.  Background

¶ 3     MarkWest, a natural gas company, procured from Zurich a commercial general liability policy (the Policy) with a limited pollution liability endorsement (the Endorsement), covering "incidents" occurring between November 1, 2012, and November 1, 2013.

¶ 4     On November 4, 2012, MarkWest was constructing a pipeline in Ohio when a chemical used in the drilling process escaped the

drilling area, thereby contaminating the surrounding area. MarkWest immediately reported the incident to local environmental officials, who approved a chemical cleanup protocol weeks later and confirmed that cleanup had been successfully completed in February 2013.

¶ 5    On March 28, 2013, MarkWest notified Zurich of the contamination and filed an associated claim for over $3 million. Although the incident had occurred and Zurich had been notified well within the Policy's coverage dates, Zurich denied the claim because MarkWest had failed to provide notice within sixty days of the "incident," as required by the Endorsement.

¶ 6    MarkWest filed the present action to recover from Zurich $3 million-plus in damages with respect to the original insurance claim, as well as additional damages for bad-faith (common law and statutory) denial of coverage.

¶ 7    Zurich filed a motion for summary judgment under C.R.C.P. 56(b), and MarkWest responded with a motion for determination of a question of law under C.R.C.P. 56(h).  As pertinent here, both cross-motions addressed the same issue — that is, whether MarkWest was barred from pursuing the lawsuit because of its

noncompliance with the Endorsement's notice provision, or whether MarkWest could proceed with its claim in the absence of prejudice to Zurich as a result of the untimely notice.

¶ 8    The district court ruled in favor of Zurich, concluding that,

- by failing to report the pollution incident to Zurich within the sixty day notice period, "MarkWest did not comply with an express condition precedent in the insurance contract";

- therefore, "MarkWest's right to coverage under the Policy was never triggered"; and

- "the question of whether Zurich was prejudiced by MarkWest's untimely notice is, therefore, irrelevant."

¶ 9    Consequently, the district court denied MarkWest's motion for determination of a question of law and granted Zurich's motion for summary judgment.

## II.  Analysis

¶ 10    MarkWest contends that the district court erred because "unless [Zurich] can show its ability to investigate the occurrence or defend against a claim was prejudiced by late notice, [the court]

3

cannot deny a claim based solely on a failure to strictly comply with the notice provision." We agree.

¶ 11    We review de novo a district court's order granting summary judgment. *Mountain States Adjustment v. Cooke*, 2016 COA 80, ¶ 11. Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Geiger v. Am. Standard Ins. Co. of Wis.*, 192 P.3d 480, 482 (Colo. App. 2008).

## A. The Policy's Meaning

¶ 12    In its main text, the Policy excluded from coverage losses due to pollutants; the Endorsement to the Policy, however, stated that "this exclusion does not apply to . . . 'property damage' caused by a 'pollution incident' provided that: . . . [t]he 'pollution incident' . . . [is] reported to [Zurich] in writing, within [sixty (60)][1] days from the date of [its] commencement."[2] The Endorsement also added a

---

[1] The language of the Endorsement provides for a thirty-day notice period, but the term was changed to sixty days by the Endorsement's applicable timetable.

[2] This was one of five conditions listed in the Endorsement that needed to be met for coverage to be extended to the otherwise-excluded losses due to pollutants. Only the notice requirement is at issue here.

"Duties In The Event of Pollution Incident" provision to the Policy which (1) repeated MarkWest's obligation to report any pollution incident within sixty days of its commencement and (2) additionally required that MarkWest report any claim caused by a pollution incident "in writing as soon as practicable" and within five years after the policy's expiration date.

¶ 13    We construe insurance policies according to principles of contract interpretation. *Shelter Mut. Ins. Co. v. Mid-Century Ins. Co.*, 214 P.3d 489, 492 (Colo. App. 2008), *aff'd*, 246 P.3d 651 (Colo. 2011). Such principles would ordinarily lead us to conclude that timely notice of contamination was a condition precedent that had to be satisfied before coverage under the policy would be extended to pollution incidents. *See Soicher v. State Farm Mut. Auto. Ins. Co.*, 2015 COA 46, ¶ 22 ("A condition precedent is '[a]n act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises.'" (quoting Black's Law Dictionary 355 (10th ed. 2014))) (alteration in original); *Dinnerware Plus Holdings, Inc. v. Silverthorne Factory Stores, LLC*, 128 P.3d 245, 247-48 (Colo. App. 2004) ("Consistent with the plain meaning of 'provided that,' courts in other jurisdictions have recognized that

use of that phrase will generally create a condition precedent.").

Under these ordinary contract principles, then, we would conclude (as the district court did) that, in and of itself, MarkWest's failure to comply with the Endorsement's notice requirement bars recovery here.

¶ 14     But the issues in this case go beyond simple "contract interpretation" and application. They also involve matters of public policy surrounding the enforcement of insurance policies.

### B. Colorado's "Notice-Prejudice" Rule

¶ 15     Traditionally, "an unexcused delay in giving notice relieve[d] the insurer of its obligations under an insurance policy, regardless of whether the insurer was prejudiced by the delay." *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 227 (Colo. 2001). "The traditional approach [was] grounded upon a strict contractual interpretation of insurance policies . . . ." *Id.* at 226.

¶ 16     In *Clementi,* the supreme court identified three policy justifications for departing from the traditional approach, to wit, "(1) the adhesive nature of insurance contracts, (2) the public policy objective of compensating tort victims, and (3) the inequity of the insurer receiving a windfall due to a technicality." *Id.* at 229.

6

Based on these policy considerations, the court abandoned its adherence to the "traditional approach" in uninsured motorist policies and adopted, in its place, the "so-called notice-prejudice rule." *Id.* at 225.

¶ 17    "Under the notice-prejudice rule, an insured who gives late notice of a claim to his or her insurer does not lose coverage benefits unless the insurer proves by a preponderance of the evidence that the late notice prejudiced its interests." *Craft v. Phila. Indem. Ins. Co.*, 2015 CO 11, ¶ 2; *see Clementi*, 16 P.3d at 229 (Under that rule, "an insurer [can] deny benefits only where its ability to investigate or defend the insured's claim was compromised by the insured's failure to provide timely notice.")

¶ 18    In *Friedland v. Travelers Indemnity Co.*, 105 P.3d 639 (Colo. 2005), the supreme court applied the notice-prejudice rule to, as here, an "occurrence" liability policy.[3]  In *Friedland*, the officer and

---

[3] An "occurrence" policy provides "liability coverage only for injury or damage that occurs during the policy term, regardless of when the claim is actually made."  Dep't of Regulatory Agencies Reg. 5-1-8, 3 Code Colo. Regs. 702-5.  In contrast, a "claims-made" policy "provides coverage only if a claim is made during the policy period or any applicable extended reporting period."  *Id.*

7

director of a mining operation sued his insurer to recover defense costs and liability payments incurred in connection with a federal CERCLA[4] suit brought to clean up pollution caused by the mine. *Id.* at 641. The individual had not, however, notified his insurer of the CERCLA lawsuit "as soon as practicable," as was required by the policy; rather, he had waited more than six years after the case had been filed *and* six months after it had been settled. *Id.* at 642. Under those circumstances, the court held that (1) the insured's notice was not timely; and (2) the notice-prejudice rule applied; but (3) "the insurer [would be] presumed to have been prejudiced by the delay" and the insured would have the opportunity to rebut that presumption. *Id.* at 643.

¶ 19 Ten years later, the supreme court rejected the application of the notice-prejudice rule to notice provisions in "claims-made" (as

---

Thus, an occurrence policy provides coverage for events occurring during the policy period (even if the claim is brought years later) while a claims-made policy provides *potential* coverage for events claimed (but not necessarily occurring) during the policy period. *See Craft v. Phila. Indem. Ins. Co.*, 2015 CO 11, ¶ 28.

[4] CERCLA is shorthand for the "Comprehensive Environmental Response, Compensation, and Liability Act of 1980," 42 U.S.C. §§ 9601 to 9675 (2012).

opposed to "occurrence") policies. *See Craft*, ¶ 7. The court based its decision on the different purposes notice requirements serve in the different types of policies: in an occurrence policy, the timing of notice affects the insurer's ability to investigate and defend a claim that would otherwise be covered by the policy, whereas in a claims-made policy, a date-certain notice requirement, by its very nature, defines the scope of coverage. *See id.* at ¶¶ 7, 28, 31-32, 45.[5] Because "the date-certain notice requirement of a claims-made policy is a fundamental term of the insurance contract, and notice under such a provision is a material condition precedent to coverage," the court held that applying the notice-prejudice rule "to excuse an insured's noncompliance with a date-certain notice requirement essentially rewrites the insurance contract and [impermissibly] creates coverage where none previously existed." *Id.* at ¶ 45.

---

[5] *See also, e.g., Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 129 A.3d 1069, 1077 (N.J. 2016) ("In the 'occurrence' policy, notice provisions are written 'to aid the insurance carrier in investigating, settling, and defending claims.' 'Claims made' policies commonly require that the claim be made and reported *within* the policy period, thereby providing a fixed date after which the insurance company will not be subject to liability under the policy.") (citation omitted).

¶ 20   Recently, the supreme court refused to apply the notice-prejudice rule to a policy provision prohibiting the insured from making voluntary payments on, or settling, a claim without the insurer's consent. *Travelers Prop. Cas. Co. of Am. v. Stresscon Corp.*, 2016 CO 22M. The court reasoned that, "[l]ike the notice of claim requirement of the claims-made policy at issue in *Craft,* the no-voluntary-payments clause of the contract at issue here actually goes to the scope of the policy's coverage." *Id.* at ¶ 14.

   *C. Does Colorado's Notice-Prejudice Rule Apply in This Case?*

¶ 21   MarkWest contends that, under *Clementi* and *Friedland*, the notice-prejudice rule applies in this case; Zurich responds that, under *Craft* and *Stresscon*, the notice-prejudice rule is inapplicable. Each party's position carries considerable force and is supported by various pronouncements in Colorado case law. And, each party's position is supported by case law from other jurisdictions.[6]

---

[6] For example, Zurich's position is supported by, among other things, a California appellate court decision in a case very much like the one here. *See Venoco, Inc. v. Gulf Underwriters Ins. Co.*, 96 Cal. Rptr. 3d 409, 416-17 (Cal. Ct. App. 2009) (holding that the notice-prejudice rule did not apply to an insurance policy that excluded pollution coverage generally, but then included an exception to that exclusion if the insured notified the insurance company within sixty days of the incident).

¶ 22    Ultimately, however, we agree with MarkWest.

¶ 23    Zurich's contention rests largely on two premises:

- the notice provision at issue here references a "date-certain" requirement, as in *Craft*; and

- the notice provision at issue here is a "material condition precedent" to determining the extent of coverage, as in *Craft* and (by implication) *Stresscon.*

¶ 24    Contrary to Zurich's first assertion, the supreme court did not decide *Craft* based on the existence of a date-certain notice clause, which may appear in either claims-made or occurrence policies. *See* 16 Richard A. Lord, *Williston on Contracts* § 49:88 (4th ed. 2002) ("Insurance contracts quite commonly contain . . . a provision requiring the insured to give notice to the insurer, *within a specified or reasonable time*, of any accident, *claim, or occurrence* which the insured asserts to be within the coverage of the policy.") (emphasis added).  Instead, as we noted above, the supreme court relied on the effect of a date-certain clause in a *claims-made policy*.  And, unlike in *Craft*, the Policy in the present case was not a claims-made policy; it was an occurrence policy, for which, as we also

11

noted above, a notice requirement serves a fundamentally different purpose.

¶ 25    With respect to Zurich's second assertion, we acknowledge that (1) the notice requirement in *Craft*, for which the court rejected application of the notice-prejudice rule, was a material condition precedent to the definition of coverage under the policy; (2) *Stresscon* similarly rejected application of the rule to a "no-voluntary-payments" or "no-settlement" provision which, like in *Craft*, "was a fundamental term" defining the scope of coverage under the policy; and (3) in the present case, the notice requirement of the Policy is framed as a condition precedent to obtaining coverage.

¶ 26    But, again, it was the purpose of (not the label attached to) the notice requirement in a claims-made policy that was critical to the court's decision in *Craft*. And in *Stresscon*, the court was concerned with enforcing a type of requirement, noncompliance with which would be inherently more prejudicial than noncompliance with the notice requirement in an occurrence liability policy. *Cf. Hanson Prod. Co. v. Ams. Ins. Co.,* 108 F.3d 627, 630-31 (5th Cir. 1997) ("[T]he failure to give notice of a claim poses

a smaller risk of prejudice than failure to obtain consent to a settlement. In many instances of untimely notice of a claim, the insurer is not prejudiced at all, and ultimately may not face any coverage obligation. Conversely, in many if not most cases where an insured settles a case without the insurer's consent, the insurer faces at least some liability.").

¶ 27 Insurance contracts quite commonly make timely notice "an express condition precedent to the insurer's duty to defend or indemnify the insured"; yet "most jurisdictions require . . . the insurer demonstrate that it was prejudiced by the delay [in providing notice]." 16 Lord, § 49:88; *see* 13 Steven Plitt, Daniel Maldonado, Joshua D. Rogers & Jordan R. Plitt, *Couch on Insurance* § 193:49 (3d ed. 2010) ("[M]any jurisdictions now require proof of prejudice in order for an insurer to avoid liability in the event of an unreasonable or unexcused delay, even under a notice provision which is a condition precedent to recovery.") (footnote omitted).

¶ 28 Indeed, in *Brakeman v. Potomac Insurance Co.*, 371 A.2d 193 (Pa. 1977) — a case upon which the supreme court relied heavily in *Clementi* — the court applied the notice-prejudice rule to a policy

13

containing a notice requirement that was a condition precedent to coverage. The Pennsylvania court reasoned that

> [a] strict contractual approach is . . . inappropriate here because what we are concerned with is a forfeiture. The insurance company in the instant case accepted the premiums paid by the insured for insurance coverage and now seeks to deny that coverage on the ground of late notice. As was said in *Cooper v. Government Employees Insurance Co.*, . . . :
>
>> "(A)lthough the policy may speak of the notice provision in terms of 'condition precedent,' . . . nonetheless what is involved is a forfeiture, for the carrier seeks, on account of a breach of that provision, to deny the insured the very thing paid for. This is not to belittle the need for notice of an accident, but rather to put the subject in perspective. Thus viewed, it becomes unreasonable to read the provision unrealistically or to find that the carrier may forfeit the coverage, even though there is no likelihood that it was prejudiced by the breach. To do so would be unfair to insureds."

*Id.* at 196-97 (quoting *Cooper v. Gov't Emps. Ins. Co.*, 237 A.2d 870, 873-74 (N.J. 1968)).

¶ 29     The extent to which our supreme court relied on *Brakeman* in deciding *Clementi* suggests that it too would apply the notice-prejudice rule to a notice provision framed as a condition

14

precedent to coverage in an occurrence liability policy.[7]  This follows

because the purpose of a notice provision in an occurrence liability

policy remains the same regardless of whether the provision is

couched as a condition (or, as here, a condition precedent) to

coverage or not.  Likewise, the underlying public policies for

requiring an insurer show prejudice to avoid coverage liability

remain the same, in either event.[8]

¶ 30     Based on these two considerations, it would, in our view,

elevate form over substance to say that the notice-prejudice rule

applies in the one instance but not the other.  *Cf. Vill. Escrow Co. v.*

*Nat'l Union Fire Ins. Co.*, 248 Cal. Rptr. 687, 692 (Cal. Ct. App.

---

[7] This perception is further bolstered by the fact that the *Friedland* court overruled a case that involved a notice provision that was a condition precedent to coverage, *see Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 287-88 (Colo. 1981), when it adopted the notice-prejudice rule for liability policies.  *See Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644-45 (Colo. 2005).

[8] Although MarkWest and Zurich actively negotiated the terms of the Endorsement, and thus, there was no "contract of adhesion" here, this makes no difference to our analysis.  *See Friedland*, 105 P.3d at 653 (Coats, J., dissenting) ("[A]bsolutely nothing suggests that this policy, purchased by the [insured] to insure against environmental lawsuits, was in the nature of an adhesion contract or was purchased for some reason other than its commercial advantage.").

1988) (depublished)[9] ("It would elevate form over substance to hold a reporting requirement was subject to the 'notice-prejudice' rule if located in a separate clause of the insurance contract, but immune from that rule if placed in the same clause with other conditions defining the insurance company's liability under the policy."); *Estate of Gleason v. Cent. United Life Ins. Co.*, 350 P.3d 349, 368 (Mont. 2015) (McKinnon, J., concurring in part and dissenting in part) ("[W]here the function and purpose of the notice provision ha[ve] not been frustrated by the insured — i.e., where there is no prejudice — the reason behind the notice condition in the policy is lacking. In these cases, the notice clause should not serve as a technical basis for the insurer to escape liability.").

¶ 31    For these reasons, we conclude that Colorado's notice-prejudice rule applies even where, as here, the notice requirement is a condition precedent to coverage under an occurrence liability policy. Because the district court concluded

---

[9] California appellate court decisions that are ordered depublished by the California Supreme Court have no precedential effect; they generally cannot be cited or relied upon by courts or parties in any other action or proceeding. *See* Cal. R. Ct. 8.1105(e)(2), 8.1115(a).

otherwise, we must reverse its decision and remand the case for further proceedings.

### III. Attorney Fees on Appeal

¶ 32    MarkWest contends that it is entitled to an award of attorney fees incurred on appeal under section 10-3-1116(1), C.R.S. 2015.[10] Its request is premature.

¶ 33    As pertinent here, section 10-3-1116(1) provides that "[a] first-party claimant . . . whose claim for payment of benefits has been unreasonably delayed or denied may bring an action in a district court to recover reasonable attorney fees and court costs." There has been no determination that MarkWest was entitled to recover benefits, much less that its claim was "unreasonably delayed or denied." Unless and until there is such a determination, MarkWest is not entitled to recover attorney fees under this section.

¶ 34    In the event MarkWest ultimately prevails on the claim that benefits were unreasonably delayed or denied, the district court, if requested, may then consider awarding MarkWest a reasonable amount of attorney fees incurred on appeal under this statute.

---

[10] In what appears to be a typographical error, MarkWest cites this statute in its opening brief as section *13*-3-1116.

## IV. Conclusion

¶ 35     The judgment is reversed and the case is remanded for further proceedings.

JUDGE TAUBMAN and JUDGE FREYRE concur.