The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader. The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 21, 2022

## 2022COA45

**No. 20CA1694, *Gregory v. Safeco Ins. Co. of America* —
Insurance — Property and Casualty Insurance — Homeowners'
Insurance — Late Notice — Notice-Prejudice Rule**

A division of the court of appeals considers whether Colorado's
notice-prejudice rule applies to a notice-of-loss provision in a
homeowners' insurance policy. This rule excuses an insured's late
filing of a claim when the insurer is unable to demonstrate that its
interests were prejudiced by the late notice. Concluding that the
supreme court has not yet extended the notice-prejudice rule to
first-party claims under homeowners' policies — or authorized the
court of appeals to do so — the division instead holds that the
older, traditional rule still applies to such policies.

The division also considers whether a provision of an
insurance policy requiring an insurer to give notice within 365 days

of a covered loss is invalid under section 10-4-110.8(12)(a), C.R.S. 2021, of the Colorado Homeowner's Reform Act of 2013. This provision provides that homeowners may still file suit against their insurer within the applicable statute of limitations notwithstanding any provision in their insurance policy that requires homeowners to file suit within a shorter time period. The division concludes that the 365-day notice provision in question does not contravene this statute.

COLORADO COURT OF APPEALS                                    **2022COA45**

---

Court of Appeals No. 20CA1694
City and County of Denver District Court No. 19CV34856
Honorable Michael A. Martinez, Judge

---

Karyn Gregory,

Plaintiff-Appellant,

v.

Safeco Insurance Company of America,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE KUHN
Furman and Pawar, JJ., concur

Announced April 21, 2022

---

Roth Milne, David Roth, Jennifer A. Milne, Denver, Colorado, for Plaintiff-Appellant

Lewis Roca Rothgerber Christie LLP, Brian J. Spano, Holly C. White, Aurora Temple Barnes, Denver, Colorado, for Defendant-Appellee

MoGo LLC, Rodney J. Monheit, Katherine E. Goodrich, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association

Waltz Reeves, Christopher R. Reeves, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association

¶ 1     In this late-notice insurance coverage dispute, Karyn Gregory brought suit against her insurer, Safeco Insurance Company of America, after Safeco denied her first-party insurance claim for property damage as untimely under her homeowners' insurance policy. Gregory appeals the district court's grant of summary judgment to Safeco rejecting the applicability of Colorado's notice-prejudice rule to policies like hers.

¶ 2     Our appellate courts have not yet considered this issue, and there appears to be uncertainty surrounding it in federal courts applying Colorado law. Gregory asks us to resolve this uncertainty. We conclude that only the supreme court may decide whether to replace the traditional rule with the notice-prejudice rule for first-party claims under homeowners' insurance policies. We therefore affirm the judgment of dismissal, but we note that this case may present an opportunity for our supreme court to provide clarity on this question.

## I.     Background

¶ 3     The facts of this case are undisputed. Gregory procured a homeowners' insurance policy (the Policy) from Safeco that covered specified direct physical damage to her home that "occurs during

the policy period." The Policy ran from February 15, 2017, to February 15, 2018, and in May 2017, a hailstorm damaged Gregory's roof — a type of loss covered under the Policy.

¶ 4     But Gregory did not notify Safeco or file a claim for the loss until roughly eighteen months later, shortly after a contractor informed her of the hail damage. Safeco did not initially investigate the damage to Gregory's home, but its initial review determined that the May 2017 hailstorm was the most recent one to occur near Gregory's property.[1] Based on this determination, Safeco summarily denied her claim as untimely, citing the eighteen-month delay and a notice provision in the Policy specific to hail damage:

> In case of a loss to which this insurance may apply, you must perform the following duties:
>
> . . .
>
> give immediate notice to us or our agent. With respect to loss caused by the peril of . . . Hail,

---

[1] Safeco did not inspect the damage to Gregory's roof until after she filed suit in December 2019. Gregory filed an affidavit by a licensed public adjuster who inspected her home in February 2020 — more than thirty-three months after the hailstorm. He believed her roof had visible and prevalent hail damage from the May 2017 hailstorm that could still have been inspected more than a year after the damage occurred.

the notice must be within 365 days after the date of the loss . . . .

Under the same section, the Policy provides that "[n]o action shall be brought against [Safeco] unless there has been compliance with the policy provisions . . . ." And at the very beginning of the Policy, it states that Safeco "will pay claims and provide coverage as described in this policy if [Gregory] . . . compl[ies] with all the applicable provisions outlined in this policy."

¶ 5    More than two years after Safeco denied her claim, Gregory filed suit, claiming that Safeco's denial was a breach of contract and a bad-faith breach of an insurance policy, and that Safeco unreasonably delayed and denied payment of her claim under sections 10-3-1115 and -1116, C.R.S. 2021.

¶ 6    Safeco filed a motion for summary judgment under C.R.C.P. 56(b), and Gregory responded with a motion for determination of a question of law under C.R.C.P. 56(h). Both motions addressed the same two issues Gregory appeals here:

(1)    whether Colorado's notice-prejudice rule applies, which would require Safeco to demonstrate it was prejudiced by

Gregory's late notice before denying her benefits for an untimely claim; and

(2)     whether the Policy's 365-day notice provision is invalid under section 10-4-110.8(12)(a), C.R.S. 2021, which limits insurers' ability to contractually shorten the applicable statute of limitations for insureds to file suits like Gregory's against them.

¶ 7     The district court ruled in favor of Safeco. It concluded that the 365-day notice requirement did not contravene the statute-of-limitations provision, that Gregory's claim was untimely under the plain terms of the Policy, that her delay was unexcused as a matter of law, and that Safeco was therefore relieved of its obligation to provide coverage benefits for her claim.

¶ 8     In so concluding, the court reasoned that the supreme court has not extended Colorado's notice-prejudice rule to first-party claims under homeowners' insurance policies like Gregory's, and, in this absence, the supreme court's precedent regarding the "traditional approach" required the court to strictly apply Gregory's failure to abide by the Policy's notice provision against her. The

4

court thus determined it did not need to reach the question of whether Safeco was prejudiced by Gregory's late notice.

## II. Analysis

¶ 9 We review the court's order granting summary judgment de novo. *MarkWest Energy Partners, L.P. v. Zurich Am. Ins. Co.*, 2016 COA 110, ¶ 11. Summary judgment is proper if there is no genuine issue as to any material fact and Safeco is entitled to judgment as a matter of law. *Id.*

¶ 10 We agree with the district court on both issues and therefore conclude that the court properly granted summary judgment to Safeco.

### A. Notice-Prejudice Rule

¶ 11 Gregory does not contend that the terms of the Policy do anything other than unambiguously bar coverage benefits for a hail-damage claim unless she provides notice to Safeco within 365 days of her loss. *Travelers Prop. Cas. Co. v. Stresscon Corp.*, 2016 CO 22M, ¶ 12 ("[A]n insurance policy is a contract, the unambiguous terms of which must be enforced as written . . . ."). Nor does she contend that her delay in giving notice of her claim was justified. *E.g., Clementi v. Nationwide Mut. Fire Ins. Co.*, 16

P.3d 223, 226-27 (Colo. 2001) (recognizing that, in certain circumstances, an insured may be excused for untimely notice if their delay in giving notice was justified).

¶ 12    Instead, Gregory argues the district court erred by not applying Colorado's notice-prejudice rule to the notice-of-loss provision in her homeowners' insurance policy. This rule "allow[s] insureds to avoid strict enforcement of a notice provision for public policy reasons." *Craft v. Phila. Indem. Ins. Co.*, 2015 CO 11, ¶ 34. Under it, "an insured who gives late notice of a claim to his or her insurer does not lose coverage benefits unless the insurer proves by a preponderance of the evidence that the late notice prejudiced its interests." *Id.* at ¶ 2. If the insurer cannot show prejudice, the insured is "excuse[d] . . . from fulfilling a straightforward contractual condition — the notice requirement." *Id.* at ¶ 39.

¶ 13    The supreme court has applied the notice-prejudice rule to notice provisions in underinsured motorist (UIM) and comprehensive general liability insurance policies. *Clementi*, 16 P.3d at 224 (UIM policy); *Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 641-42 (Colo. 2005) (liability policy). Gregory acknowledges that no Colorado court has explicitly applied this rule to

6

homeowners' policies like hers. Nonetheless, she argues that —
regardless of the type of insurance policy involved — supreme court
precedent allows us to extend this rule to new types of coverage if
we are satisfied by the public policy considerations enumerated in
*Clementi*.

¶ 14    We disagree. We note the supreme court's acknowledgement
of the "modern trend" to extend the notice-prejudice rule to late-
notice cases, *Clementi*, 16 P.3d at 229-30, but the court has been
careful in applying and extending the rule — and indeed in the
associated weighing of public policy considerations. In our view,
applying the notice-prejudice rule to an entirely new class of
insurance policies would still require departure from our supreme
court's precedent, an undertaking exclusively reserved to that
court. *See People v. Novotny*, 2014 CO 18, ¶ 26. For this reason,
we conclude the district court properly applied Colorado's
traditional approach to Gregory's late-filed insurance claim.

1.    The Backdrop: Colorado's Traditional Approach

¶ 15    Traditionally, Colorado courts did not consider insurer
prejudice in late-notice cases, no matter the type of insurance
policy involved. *See Clementi*, 16 P.3d at 226. Rather, Colorado law

7

has held that "an unexcused delay in giving notice relieves the insurer of its obligations under an insurance policy, regardless of whether the insurer was prejudiced by the delay." *Id.* at 227. This traditional approach is "grounded upon a strict contractual interpretation of insurance policies under which delayed notice was viewed as constituting a breach of contract, making the issue of insurer prejudice immaterial." *Id.* at 226.

¶ 16 Yet, the traditional approach did not leave an insured without recourse in all circumstances when their insurer denied a late claim as untimely. Rather, Colorado law held that an insured could be excused for a delay in providing notice if the insured demonstrated "justifiable excuse or extenuating circumstances explaining the delay." *E.g.*, *Certified Indem. Co. v. Thun*, 165 Colo. 354, 360, 439 P.2d 28, 30 (1968).

¶ 17 Colorado adhered to the traditional approach for nearly a century following the supreme court's landmark 1909 case, *Barclay v. London Guarantee & Accident Co.*, 46 Colo. 558, 105 P. 865 (1909). *Marez v. Dairyland Ins. Co.*, 638 P.2d 286, 288-89 (Colo. 1981) (collecting cases and tracing the traditional approach to *Barclay*), *overruled in part by Friedland*, 105 P.3d 639. Indeed,

8

since *Barclay*, Colorado courts have applied the traditional approach to notice provisions for first-party claims under insurance policies covering property and other personal loss. *See Capitol Fixture & Supply Co. v. Nat'l Fire Ins. Co.*, 279 P.2d 435, 437 (Colo. 1955) (fire insurance policy for late proof of loss); *Circle C Beef Co. v. Home Ins. Co.*, 654 P.2d 869, 870 (Colo. App. 1982) (fire insurance policy for late proof of loss); *Jennings v. Bhd. Accident Co.*, 44 Colo. 68, 73-76, 96 P. 982, 984 (1908) (disability insurance policy for late proof of loss); *Ord. of United Com. Travelers v. Boaz*, 27 Colo. App. 423, 425-28, 150 P. 822, 824 (1915) (accidental death insurance policy for late notice of loss), *rev'd on other grounds*, 69 Colo. 44, 168 P. 1178 (1917); *see also Conn. Fire Ins. Co. v. Colo. Leasing, Min. & Milling Co.*, 50 Colo. 424, 435-43, 116 P. 154, 160 (1911) (refusing to apply traditional approach to notice-of-loss provision in fire insurance policy based on court's conclusion that the policy at issue did not make timely notice a condition precedent to coverage); *Preferred Accident Ins. Co. v. Fielding*, 35 Colo. 19, 22-28, 83 P. 1013, 1015-16 (1905) (same outcome for notice-of-loss provision in accidental injury insurance case).

¶ 18     In the 1981 case *Marez v. Dairyland Insurance Co.*, the supreme court considered for the first time whether to abandon the traditional approach and adopt the notice-prejudice rule in the context of an automobile liability insurance case in which the insured failed to provide any notice to his insurer of an otherwise covered liability claim made against him. 638 P.2d at 290. In this no-notice context, the supreme court concluded that the "salutary purposes of the notice provisions should not be set aside without substantial justification," and the insured's complete lack of notice "did not provide a factual context compelling a departure from the traditional approach." *Clementi*, 16 P.3d at 227 (citing *Marez*, 638 P.2d at 290-91). The court thus "refused to depart" from the approach it traced back to *Barclay*, *id.*, concluding that the insured's failure to abide by the policy's notice provision constituted, as a matter of law, a breach of the policy relieving the insurer of its obligation to cover the claim, *Marez*, 638 P.2d at 286, 288-89.

¶ 19     Gregory contends that, though the traditional approach was alive and well in Colorado going into the twenty-first century, the supreme court's modern precedent permits this court to reject the

traditional approach's application to her first-party claim under a homeowners' insurance policy.

## 2. Modern Cases: Adopting Notice-Prejudice in Limited Circumstances

¶ 20    In 2001, the supreme court in *Clementi* again reviewed whether to abandon the traditional approach — this time in the context of a late-notice case under a UIM insurance policy.  16 P.3d at 224-25.  In its analysis, the court observed that it "ha[d] not previously considered whether the notice-prejudice rule applies in UIM cases," and that the modern trend in the majority of states has been to apply the notice-prejudice rule "in the context of a UIM case."  *Id.* at 225, 228.  The court decided to bring Colorado in line with that modern trend and "expressly adopt the notice-prejudice rule in Colorado, as it applies to UIM cases."  *Id.* at 232.

¶ 21    To get to this ruling, *Clementi* distinguished *Marez*, concluding that "because *Marez* involved a no-notice liability case, we find that *Marez* is inapplicable in determining whether insurer prejudice should be considered in the UIM late-notice case at bar."  *Id.* at 228; *see also Friedland*, 105 P.3d at 644 n.2.  *Clementi*, in other

words, "limited [itself] to the particular context of [its] case, a UIM policy." *Friedland,* 105 P.3d at 645.

¶ 22  In support of its adoption of the notice-prejudice rule for late-notice UIM cases, *Clementi* identified three public policies that other states had offered for justifying a departure from the traditional approach: (1) the adhesive nature of UIM insurance contracts, (2) the public policy objective of compensating innocent tort victims, and (3) the inequity of the insurer reaping a windfall by invoking a technicality to deny coverage. *Clementi,* 16 P.3d at 229; *see also Craft,* ¶ 26. Reasoning that all three policy justifications had been recognized in Colorado law — at least in the particular context of UIM insurance — the court adopted the notice-prejudice rule for UIM policies, concluding that "insurer prejudice should now be considered when determining whether noncompliance with a UIM policy's notice requirements vitiates coverage." *Clementi,* 16 P.3d at 229-30.

¶ 23  Five years later, the supreme court in *Friedland* again revisited the notice-prejudice rule in a late-notice liability case, granting certiorari "to determine whether the notice-prejudice rule announced in *Clementi* . . . applies to liability policies" and

answering that question in the affirmative. *Friedland,* 105 P.3d at 641.

¶ 24 The parties in *Friedland* argued whether *Clementi*'s adoption of the notice-prejudice rule should be limited to UIM cases. *Id.* at 644 n.2. The court recognized a trend in other states to apply this rule to liability policies, and again it reasoned that the same public policy justifications outlined in *Clementi* — this time analyzed in the liability insurance context — supported the extension of the notice-prejudice rule to liability policies. *Id.* at 646-47; *see also Marez,* 638 P.2d at 293 (Quinn, J., dissenting) (analyzing public policies in automobile liability context). In so ruling, the supreme court "overrule[d] *Marez* to the extent it applies to late-notice liability cases." *Friedland,* 105 P.3d at 643, 645.

¶ 25 Ten years later, the supreme court again revisited the notice-prejudice rule in two liability insurance cases — *Craft* and *Stresscon.* In *Craft*, the supreme court declined to extend the notice-prejudice rule to a date-certain notice requirement in a "claims-made" policy — that is, a policy which "covers only those claims brought against the insured during the policy period and reported to the insurer by a date certain, typically within a brief

13

window following expiration of the policy period."[2]  *Craft*, ¶¶ 3, 4, 7, 32.  And in *Stresscon*, the supreme court again declined to extend the rule to a different type of policy provision — a "no voluntary payments" clause that excluded from coverage certain payments the insured voluntarily made to a tort victim without the consent of their insurer.  *Stresscon*, ¶¶ 2-3, 23.

¶ 26     In both cases, the supreme court noted that it had not previously addressed whether the notice-prejudice rule should apply in these contexts.  *Craft*, ¶ 2; *see Stresscon*, ¶¶ 17-21.  And for each context, the court reasoned that the public policies recognized in *Clementi* did not support the extension of the rule. *Craft*, ¶¶ 7, 43-45; *Stresscon*, ¶¶ 11-15.

### 3. The Traditional Approach Still Applies to Gregory's Policy

¶ 27     Gregory contends that the *Clementi* line of cases requires us to determine if the public policies recognized in *Clementi* support extension of the notice-prejudice rule to policies like hers.  Amicus

---

[2] The court distinguished *Friedland* as involving an occurrence liability policy as opposed to a claims-made liability policy.  *Craft v. Phila. Indem. Ins. Co.*, 2015 CO 11, ¶¶ 40-45.  Gregory's policy covered losses occurring during, not claims made in, the policy period.

in support of Gregory argues that this line of cases establishes notice-prejudice as the default rule in late-notice cases that applies unless the *Clementi* policies are *not* satisfied.

¶ 28 We disagree with both readings of these cases. We see the supreme court as taking a case-by-case approach that extends the notice-prejudice rule to only the particular type of insurance policy before it. *Cf. Stresscon,* ¶¶ 8-9 (*Clementi* and *Friedland*'s notice holdings "did not . . . also implicitly extend our newly minted notice-prejudice rule to no-voluntary-payments or consent-to-settle provisions."). The supreme court has not yet unequivocally applied the notice-prejudice rule to all late-notice cases.

¶ 29 To the contrary, it has specifically limited its notice-prejudice holdings to UIM and liability insurance policies. In *Clementi* and *Friedland*, it expressly said so. *Craft,* ¶ 21 ("Although we limited our holding in *Clementi* to late notice in the UIM context, our analysis in that case laid the groundwork for our later decision in *Friedland.*"); *Friedland,* 105 P.3d at 643 ("In this case, we apply the notice-prejudice rule to liability policies."). Moreover, both cases explicitly relied on public policy justifications specific to UIM and liability policies, respectively. *Craft* even noted on multiple

15

occasions that *Clementi* first adopted the notice-prejudice rule "for UIM cases" and *Friedland* later "extended" it to liability policies. *Craft*, ¶¶ 7, 16, 23, 25, 26.

¶ 30 Against the historical backdrop of the traditional approach in Colorado, these limited holdings — and their treatment of *Marez* in particular — do not persuade us that the court has implicitly overruled its traditional approach for all insurance policies. As noted, *Friedland* overruled *Marez* "to the extent it applies to late-notice liability cases." *Friedland*, 105 P.3d at 643, 645. And in *Clementi*, the court distinguished *Marez* on the basis that *Clementi* involved a UIM rather than liability policy. *Id.* at 645. Together, these cases show that the court cabined *Marez*'s refusal to depart from the traditional approach to the no-notice *liability* context — not the no-notice context for *any* type of insurance policy.[3] In any

---

[3] While the supreme court in *Clementi* explicitly disapproved of this court's extension of *Marez* to "non-liability late-notice cases," this statement came in the context of the supreme court's discussion of this court's application of *Marez* to both UIM and liability policies. *Clementi v. Nationwide Mut. Fire Ins. Co.*, 16 P.3d 223, 227-28 & n.5 (Colo. 2001) (citing court of appeals cases applying *Marez* to UIM policies). In this context, we do not read "non-liability" to mean "all types of policies that aren't liability policies" but rather only the type before the *Clementi* court — a UIM policy. *See Friedland v. Travelers Indem. Co.*, 105 P.3d 639, 644 n.2 (Colo. 2005) ("We

event, *Marez* didn't announce the traditional approach; it merely applied it. *Id.*; *Marez*, 638 P.2d at 286, 288. We thus disagree that the supreme court has jettisoned the traditional approach for all but no-notice cases.

¶ 31     Further, contrary to Gregory's assertion, this court has never ruled that the supreme court has given us authority to use the *Clementi* justifications to extend the reach of the notice-prejudice rule to policies other than liability or UIM. In *MarkWest*, on which Gregory relies for this assertion, the division held that "Colorado's notice-prejudice rule applies even where . . . the notice requirement is a condition precedent to coverage under an occurrence liability policy." *MarkWest*, ¶ 31. But to reach this conclusion, *MarkWest* did not analyze or otherwise rely on the *Clementi* policies, and, notably, *MarkWest* involved the same type of policy as that in *Friedland*. *See id.* at ¶¶ 16, 21-31. Additionally, the supreme court has seemingly disapproved of this court using the *Clementi* policies

---

recognize that [*Clementi*] might be read as reaffirming the *Marez* rule as to all cases other than UIM cases. We clarify that we did not intend to make a holding to this effect; rather, we were distinguishing *Marez* at that time and chose to leave the potential applicability of our *Clementi* rationale to a liability policy case to some future time.").

to extend the notice-prejudice rule to new types of provisions in UIM and liability policies. *Compare Lauric v. USAA Cas. Ins. Co.*, 209 P.3d 190, 193 (Colo. App. 2009) ("Although the decision in *Clementi* involved a late notice of claim, we conclude that the supreme court, as evidenced by the decision in *Friedland* and its disapproval of the *Hawkeye* decision in *Clementi*, would apply the notice-prejudice rule to an insured's failure to notify the insurer of, and obtain its consent to, a settlement with a tortfeasor in a UIM case."), *with Stresscon*, ¶¶ 8-9 ("We did not [in *Friedland*] also implicitly extend our newly minted notice-prejudice rule to no-voluntary-payments or consent-to-settle provisions.").

¶ 32 In our view, given its decision to carefully circumscribe its holdings rather than announce a broad rule, the supreme court has not yet indicated that the notice-prejudice rule should apply to all types of insurance policies. We therefore conclude that the task of deciding whether to extend the notice-prejudice rule to a new type of insurance policy is not one we may undertake.

¶ 33 In concluding this, we note that federal district courts applying Colorado law have split, under facts nearly identical to those here, on whether the notice-prejudice rule applies to first-

18

party claims under homeowners' insurance policies. *Compare Cherry Grove E. II Condo. Ass'n v. Phila. Indem. Ins. Co.*, No. 16-cv-02687-CMA-KHR, 2017 WL 6945038, at *4-5 (D. Colo. Dec. 20, 2017) (in late-notice hail-damage case, concluding the *Clementi* policy justifications do not support extension of the notice-prejudice rule to "first-party insurance coverage"), *with Hiland Hills Townhouse Owners Ass'n v. Owners Ins. Co.*, No. 17-cv-1773-MSK-MEH, 2018 WL 4537192, at *4-6 (D. Colo. Sept. 20, 2018) (concluding the opposite). But even *Hiland Hills* seemed to recognize that its conclusion might not be based on controlling Colorado precedent, but rather on a prediction about what the supreme court would do with its existing precedent if faced with this issue. *See Hiland Hills*, 2018 WL 4537192, at *6 ("[T]o the extent that *Friedland* does not already control the outcome here, this Court is persuaded that the Colorado Supreme Court's analysis in that case would yield the conclusion that the notice/prejudice rule is applicable in the first-party casualty insurance context as well."); *see also Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020) (when Colorado law has not addressed a specific issue, the federal court will predict

19

what the Colorado supreme court would hold). And, while both cases analyzed the *Clementi* policy justifications to reach their respective conclusions, a third federal case concluded that even undertaking this *Clementi* analysis would be improper, as it would be premised on a prediction that the supreme court would overrule its existing precedent with respect to the traditional approach. *656 Logan St. Condo. Ass'n v. Owners Ins. Co.*, 389 F. Supp. 3d 946, 952-56 (D. Colo. 2019); *see also 6 W. Apartments, LLC v. Ohio Cas. Ins. Co.*, No. 1:20-cv-02243-RBJ, 2021 WL 4949154, at *7 (D. Colo. Oct. 25, 2021) (agreeing with the analysis in *656 Logan Street* and stating that "[t]he cases establishing notice-prejudice regimes for some insurance contracts contain policy justifications and broad language that makes their applicability to other insurance regimes unclear").

¶ 34     We also acknowledge that the supreme court has, at times, spoken more broadly about the implications of its holdings in *Clementi* and *Friedland*. *See Stresscon*, ¶ 24 (Márquez, J., dissenting) ("[O]ur own precedent recogniz[es] that, where a provision of an insurance contract does not fundamentally define the scope of coverage, but instead protects the insurer's opportunity

to investigate and defend or settle claims, the insured's violation of that provision should not present an absolute bar to recovery."); *Friedland,* 105 P.3d at 645 ("Because of its reasoning and departure from the *Barclay* and *Marez* line of cases in favor of the notice-prejudice rule adopted by the majority of jurisdictions throughout the United States, we find that *Clementi,* not *Marez,* is the applicable stare decisis precedent."); *Friedland,* 105 P.3d at 647 ("[W]e recognize that our decision today leaves little, if any, vitality to *Marez* because disputes will likely arise only in the context of late notice by an insured . . . ."). Moreover, at least two states that have considered this issue have extended the notice-prejudice rule to notice provisions for first-party claims for coverage. *Pitzer Coll. v. Indian Harbor Ins. Co.,* 447 P.3d 669 (Cal. 2019) (notice-of-loss provision in policy covering remediation for discovered pollution conditions); *Estate of Gleason v. Cent. United Life Ins. Co.,* 2015 MT 140, 350 P.3d 349 (notice-of-loss provision in cancer benefit insurance policy); *see also Ridglea Estate Condo. Ass'n v. Lexington Ins. Co.,* 415 F.3d 474, 479-80 (5th Cir. 2005) (predicting that Texas law would apply the notice-prejudice rule to notice-of-loss provision in property insurance policy); *but see GuideOne Mut. Ins.*

*Co. v. First Baptist Church of Brownfield*, 495 F. Supp. 3d 428, 435-37 (N.D. Tex. 2020) (predicting that Texas law would not apply the notice-prejudice rule to proof-of-loss provision in property insurance policy).

¶ 35    But fundamentally, the purpose of the notice-prejudice rule is to allow the insured to avoid a forfeiture for reasons of public policy.[4]  *Craft*, ¶ 34.  And in *Clementi* and *Friedland*, the supreme court concluded that such reasons warranted the extension of the rule to the insurance policies before it.  But the traditional approach itself serves its own public policies — policies that might counsel in favor of forfeiture in this instance.  *E.g., id.* at ¶ 35; *Marez*, 638 P.2d at 291; *Stresscon*, ¶ 12.  Gregory, in essence, asks us to predict that the supreme court would conclude that the public policies it identified in *Clementi* would override the policies it has identified as underpinning the traditional approach.

¶ 36    For her part, Gregory argues that the three *Clementi* policy justifications provide good reasons for extending the notice-

---

[4] We note that, ordinarily, this court may examine whether a provision of an insurance contract is void as against public policy. But "the notice-prejudice rule does not render a notice provision void," but rather only excuses late notice.  *Craft*, ¶ 34.

prejudice rule to her policy. *See Friedland*, 105 P.3d at 645 ("We have a heightened responsibility to scrutinize insurance policies for provisions that unduly compromise the insured's interests . . . ."). First, she argues that, like in the UIM or automobile liability context, homeowners' insurance contracts are adhesive, as insureds enter into them "for the financial security obtained by protecting themselves from unforeseen calamities and for peace of mind, rather than to secure commercial advantage as with a negotiated business contract," and they are "typically provided with form contracts promulgated by the insurer" in which there is a disparity of bargaining power. *Friedland*, 105 P.3d at 646. Second, she continues, like in the UIM context, the Policy protects the homeowner who invokes it for damages and who should be made whole within the limits of the coverage. While insured homeowners are not technically victims of a tort, Gregory notes that such insureds have suffered a loss — they are victims, in essence, of "acts of god" rather than a human tortfeasor — and coverage for this loss is a "fundamental purpose" of homeowners' insurance. *See id.* And third, Gregory argues that insured homeowners pay premiums for this coverage, and whether an insurer's interests

would suffer because of technical late notice is exactly what the notice-prejudice rule is intended to determine.

¶ 37 Gregory argues that these policy reasons warrant extension of the notice-prejudice rule to first-party claims in the homeowners' insurance context. Maybe so, but we do not see this policy judgment as ours to make. *See Novotny*, ¶ 26 ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989))). The traditional approach already has its own built-in safety valve for late-filing insureds — the above-discussed doctrine of "justifiable excuse." We think that only the supreme court may add the notice-prejudice rule to this framework.

¶ 38 This leaves us with older supreme court cases applying the traditional approach to similar notice provisions in policies covering property loss. *E.g.*, *Capitol Fixture & Supply Co.*, 279 P.2d at 435 (fire insurance case applying traditional approach to a late-filed proof of loss). Gregory's policy included a requirement that she

24

report hail damage within 365 days, and coverage benefits under the Policy were conditioned on complying with its terms. Under this approach, then, Gregory's timely notice of loss was a condition precedent for her contractual right to recover for the hail damage to her home. *See MarkWest*, ¶ 13 ("[P]rinciples of contract interpretation . . . would ordinarily lead us to conclude that timely notice of [an incident triggering coverage] was a condition precedent that had to be satisfied before coverage under the policy would be extended to [that] incident[]."); *Fielding*, 35 Colo. at 25, 83 P. at 1015-16 ("[W]hile notice is a condition precedent to maintaining an action, a failure on the part of the insured or beneficiary under a policy of insurance to comply with its terms with respect to notice after loss, will not result in a forfeiture of the policy unless, by the express terms thereof, or by necessary implication, such was the contract of the parties."). Gregory's unexcused late notice therefore relieved Safeco of its obligation to cover this loss. *See Clementi*, 16 P.3d at 227.

¶ 39    For these reasons, we conclude that the traditional approach still applies to the notice provision in Gregory's homeowners' insurance policy. The district court thus did not err in declining to

determine whether Safeco was prejudiced by Gregory's untimely notice. *See id.* at 226-27 (Under the traditional approach, "delayed notice [is] viewed as constituting a breach of contract, making the issue of insurer prejudice immaterial.").

## B.    Statute of Limitations

¶ 40    Next, Gregory contends that the 365-day notice provision in the Policy violates section 10-4-110.8(12)(a) of the Colorado Homeowner's Reform Act of 2013.  This provision states:

> Notwithstanding any provision of a homeowner's insurance policy that requires the policyholder to file suit against the insurer, in the case of any dispute, within a period of time that is shorter than required by the applicable statute of limitations provided by law, a homeowner may file such a suit within the period of time allowed by the applicable statute of limitations . . . .

§ 10-4-110.8(12)(a).

¶ 41    Gregory argues that the 365-day notice provision contravenes this statute because it effectively shortens the applicable statute of limitations to 365 days — shorter than that for her legal claims.  We agree with the district court that a policy requirement to file a timely claim with an insurer has no bearing on the insured's ability to file a timely lawsuit for the insurer's alleged violations of that

26

policy.[5]  We base this conclusion on principles of accrual and a plain reading of the 365-day notice provision in question.  *See MarkWest,* ¶ 13 ("We construe insurance policies according to principles of contract interpretation.").

¶ 42     First, "[i]ntegral to any statute of limitations is the time of accrual: the time when the proverbial clock starts ticking and the statute of limitations begins to run."  *Rooftop Restoration, Inc. v. Am. Fam. Mut. Ins. Co.,* 2018 CO 44, ¶ 13.  The basis of each of Gregory's legal claims is Safeco's allegedly wrongful handling of her insurance claim for coverage benefits.  *See Emenyonu v. State Farm Fire & Cas. Co.,* 885 P.2d 320, 324 (Colo. App. 1994).  Gregory's legal claims did not begin to accrue, then, until at the earliest she knew or should have known that Safeco wronged her in handling her insurance claim.  *See* § 13-80-108(1), (6), C.R.S. 2021; *Daugherty v. Allstate Ins. Co.,* 55 P.3d 224, 226 (Colo. App. 2002), *superseded by statute as stated in Brodeur v. Am. Home Assurance*

---

[5] Because we conclude this, we reach neither Safeco's contention that Gregory's motion for a determination of a question of law was, in fact, a motion for summary judgment filed after the deadline for dispositive motions, nor Gregory's responses that her motion was rather a timely filed cross-motion for summary judgment and that, either way, Safeco did not preserve its contention.

*Co.*, 169 P.3d 139 (Colo. 2007). And by definition, Safeco could not even begin handling her insurance claim — much less handle it wrongfully — until Safeco received notice of it. *Emenyonu*, 885 P.2d at 324. Notice of Gregory's insurance claim was thus a prerequisite to accrual of her legal claims based on Safeco's wrongful handling of that insurance claim.

¶ 43    Second, the 365-day notice provision on its face does not bar Gregory from bringing suit against Safeco — either within 365 days or beyond. "[A]n insurance policy is a contract, the unambiguous terms of which must be enforced as written," *Stresscon*, ¶ 12, and this notice provision only purports to define one of Gregory's duties under the contract. Far from limiting Gregory's window to file suit, this provision instead defines a circumstance in which Gregory — not Safeco — breaches the contract and forfeits entitlement to coverage benefits for an otherwise covered loss.

¶ 44    The duration, or even the existence, of a provision requiring Gregory to notify Safeco of covered losses within a certain window thus has no bearing on her window to file suit for Safeco's alleged wrongdoing under that contract. We therefore conclude that the

28

365-day notice provision in Gregory's Policy does not contravene section 10-4-110.8(12)(a).

### III. Conclusion

¶ 45    The judgment is affirmed.

JUDGE FURMAN and JUDGE PAWAR concur.